BERTHA B. LeMOINE, Joined by Her Husband, J. N. LeMOINE, v. ANNIE SPICER.

1 So. (2nd) 730
Division A
Opinion Filed April 25, 1941

*Evan Evans,* for Plaintiffs in Error;

*Edgar W. Waybright, Sr.,* and *Roger J. Waybright,* for· Defendant in Error.

BUFORD, J.—We review, on writ of error, judgment in favor of defendant on demurrer sustained to amended declaration. The amended declaration is in five (5) counts. and is as follows:

"Come now the plaintiffs Bertha LeMoine, joined by her husband, J. N. LeMoine, and file this their Amended Declaration against Annie Spicer, defendant, for this, to-wit:

"1.   That on or about the 10th day of June, 1938, in the City of Miami, Dade County, Florida, the defendant falsely spoke of and concerning the plaintiff Bertha LeMoine the following words, that is to say: 'The reason she was not at the Lodge opening was because she was drunk,' by reason whereof plaintiff lost her position as exalted Commander

of American Pioneers Klan, No. 1, Womens Department, Knights of the Ku Klux Klan.

"2. That on or about the 15th day of April, 1939, in the City of Tampa, Florida, defendant, falsely and maliciously spoke of and concerning the plaintiff Bertha B. LeMoine the following words, that is to say: 'She has been drunk on several occasions at the meetings of American Pioneers,' whereby plaintiff lost her position as exalted Commander of American Pioneers Klan No. 1, Womens Department, Knights of the Ku Klux Klan.

"3. That on or about the 1st day of July, 1938, in the City of Jacksonville, Duval County, Florida, the defendant falsely and maliciously spoke and published of and concerning the plaintiff Bertha B. LeMoine the following words, that is to say: 'Time after time she has presided while she was intoxicated.' That said statement was made of and concerning plaintiff in her capacity as Exalted Commander of American Pioneers No. 1, Womens Department, Knights of the Ku Klux Klan, whereby plaintiff lost her said position.

"4. That on or about the 1st day of January, 1940, in the City of Jacksonville, Duval County, Florida, at which time the plaintiff Bertha B. LeMoine was an officer in a fraternal organization known as Royal Neighbors, defendant falsely and maliciously spoke and published of and concerning the plaintiff as such officer the following words, that is to say: 'She will ruin the order because she gets drunk all the time,' whereby said plaintiff lost her said position.

"5. That on or about the 15th day of January, 1940, in the City of Jacksonville, Duval County, Florida, the defendant falsely spoke of and concerning the plaintiff the following words, that is to say: 'She is a drunkard,' whereby said plaintiff lost her said position as Exalted

Commander of American Pioneers No. 1, Womens Department, Knights of the Ku Klux Klan."

Demurrer was properly sustained to the third count.

The question presented is whether or not orally, maliciously and falsely saying of and concerning another that she or he "was drunk" or that she or he "has been drunk on several occasions at the meetings of a fraternal order;" or that she or he "will ruin the order because she (or he) drinks and gets drunk;" or that she or he "is a drunkard and gets drunk all the time," are actionable *per se*. Our construction of the declaration is that it does not charge special damages.

The rule appears to be stated in 33 Am. Jurisprudence, Libel and Slander, page 44, Sec. 11, as follows:

"Any printed or written statement which falsely and maliciously charges another with the commission of a crime is libelous *per se*. If such a statement is made orally, it is actionable *per se* if proof of the commission of the act of which the party is accused would subject him to an indictment for a crime involving moral turpitude, or would make him liable to a punishment infamous in character or to a punishment which, though not necessarily ignominious, would bring disgrace upon him and would injure his social standing. It is generally accepted that an offense answers this description if it is punishable by imprisonment in a state prison,—that is, if it is a felony. It is to be noted, however, that the statement of the rule as to when oral words charging a crime are actionable *per se* varies considerably in different jurisdictions. In fact, from the rather loose expressions to be found in some of the cases, it would seem that if the offense charged is indictable, that circumstance alone is sufficient to make proof of special damage unnecessary to sustain the action. It is doubtful,

however, if the courts apparently holding such a doctrine ever intended to adopt so broad a rule.

"In England, to make spoken words actionable *per se,* the offense charged must be punishable by imprisonment, and not merely by a fine, although it is not necessary that it be indictable. A similar rule obtains in Canada. In the United States, there is authority to the effect that words involving moral turpitude and subjecting the offender to corporal punishment are actionable *per se,* regardless of the place of confinement, whether it be a state prison or a local house of correction, but as a general rule the offense must be indictable. Instances are, however, not unknown wherein the charging of an offense punishable only by fine, which is recoverable by complaint and warrant, not by indictment, has been held actionable *per se.,* if the element of disgrace is involved in the slander."

Chapter 16978, Acts of 1935, condemns drunkenness or intoxication by the voluntary use of intoxicating liquors or drugs as a crime punishable by fine or by imprisonment in the county jail.

Paragraph 4, Section 17, of Chapter 19551, Acts of 1939, provides that the Department of Florida Highway Patrol shall not issue any license "to any person as an operator or chauffeur who is an habitual drunkard or is addicted to the use of narcotic drugs."

We find that there is conflict between the holdings in several jurisdictions as to whether or not language like that alleged in this declaration will constitute slander *per se* when such statements are falsely and maliciously made. But, regardless of the divergence of views in this regard, it appears to us that the act or acts which are alleged to have been charged against the plaintiff, if true, would make her amenable to punishment which, though not necessarily

ignominious, would bring disgrace upon her and would injure her social standing.

In Restatement of the Law of Torts, American Law Institute, Vol. 3, page 170, Sec. 570, and page 171, Sec. 571, the rule is stated thus:

Sec. 570. "Liability without Proof of Special Harm, When Imposed—Slander. One who falsely and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a slander is liable to the other although no special harm or loss of reputation results if the publication imputes to the other: (a) a criminal offense, as stated in Sec. 571, or (b) a presently existing venereal or other loathsome and communicable disease, as stated in Sec. 572, or (c) conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office as stated in Sec. 573, or (d) the other being a woman, acts of unchastity, as stated in Sec. 574.

Sec. 571. "Slanderous Imputations of Criminal Conduct. One who falsely and without a privilege to do so, publishes a slander which imputes to another conduct constituting a criminal offense is liable to the other if the offense charged is of a type which, if committed in the place of publication, would be (a) chargeable by indictment or its modern equivalent, and (b) punishable by death or by imprisonment otherwise than in lieu of fine."

In Section 571, *supra,* the text says:

"(b) Risk of Punishment Unnecessary.—To make the defamer liable under the rule stated in this Section, it is necessary that the offense charged be criminal in character but it is not necessary that, if true, it subject the other to a risk of punishment. Thus, it is immaterial that the charge of crime be accompanied by a statement that the other has

already been punished or that he has been tried by a court and acquitted. Neither is it material that the criminal conduct is charged as of such a time that the statute of limitations has run against the offense. So, too, it is unimportant that the conduct charged does not constitute a criminal offense under the law of the place where it is alleged to have occurred. It is enough that the conduct imputed to the other be criminal under the law of the place where the defamatory communication is published. The fact that the other is not subject to punishment by reason of his tender years or deranged mind is no defense. So, too, it is no defense that the crime charged is physically impossible, if such fact does not patently appear from the language used."

Although the offense of becoming intoxicated or drunk by the voluntary use of intoxicating liquors is not a felony, it is punishable by either fine or imprisonment and while the offense may be prosecuted under affidavit or information, it is also an indictable offense, as grand juries have the power to return indictments charging the violation of any criminal statute in this State.

In the case of Laudati v. Stea, *et al.*, 44 R. I. 303, 117 Atl. 422, 26 A. L. R. 450, the court held:

"An accusation is libelous *per se* which falsely charges an offense which, although not a crime at common law, if proved, may subject the party accused to a punishment, not ignominious but bringing disgrace. Kelley v. Flaherty, 16 R. I. 234, 27 Am. St. Rep. 739, 14 Atl. 876 (a charge of fornication) ; Morrissey v. Providence Telegram Pub. Co., 19 R. I. 124, 32 Atl. 19 (a charge that a man is an 'ex-convict') ; Blake v. Smith, 19 R. I. 476, 34 Atl. 995 (a charge of the keeping of a house of ill-fame)."

We realize that this is a border-line case. We also

realize that the charge must be treated the same as if the plaintiff were a man instead of a woman; that there can in law be no differentiation because of sex. We are also faced with the knowledge of conditions as they exist, one of which conditions is known to everyone and to which we as a Court may not close our eyes, that drinking of intoxicating liquor is probably as prevalent among women as it is among men and that great numbers of men and women, young and old, indulge in drinking parties, commonly known as cocktail parties, promiscuously and without segregation of the sexes.

Although this is all true and is a matter of common knowledge, to become voluntarily drunk or intoxicated by the use of intoxicating liquor is a statutory crime as provided by law enacted as late as 1935; that the conviction of this crime may entail the disgrace of being confined in a common jail for the period of three months.

It is also recognized by science and is accepted as true by the public that drunkenness incapacitates one mentally and physically for efficient performance of any duties involving responsibility and trust as well as for social association.

So it is that while the imbibing of intoxicating liquors has become an all too popular pastime and is indulged in by some of the most respected and honorable citizens, drunkenness is looked upon as debauchery and the one who has reached the stage of becoming a drunkard (and that means habitually drunk) is looked upon as an imposition on society generally. He or she who so indulges will become an object of contempt and an outcast from society and the world of business and worthwhile enterprise.

It therefore follows, and we must hold, that to falsely and maliciously charge one with being repeatedly, or continuously or oftentimes drunk, or with being an habitual drunkard, is actionable *per se* in this jurisdiction.

The judgment is reversed and the cause remanded for further proceedings.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, J. J., concur.