66 So.2d 679 (1953)
MIAMI HERALD PUB. CO.
v.
BROWN.
Supreme Court of Florida, en Banc.
July 28, 1953.
Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson and William C. Steel, Miami, for appellant.
Chesterfield H. Smith, Wm. A. McRae, Jr., and Holland, Bevis & McRae, Bartow, for appellee.
THOMAS, Justice.
This litigation arose from a rather curious set of circumstances. In an issue of The Miami Herald there appeared an article entitled "Wonder Who Will Default? Prosecutor or Bolita Kingpin" dealing with divorce litigation between one Emmett Caraker, described as a "lottery king", mentioning an impending golf match between him and the State Attorney who lived in Polk County and referring to his pleas of guilty "to attempted bribery and operating a lottery." At the head of the item, on the left, was a photograph labeled "Emmett Caraker" and on the right a photograph of the lawyer. As it developed the picture labeled Caraker's was not his at all but one of the plaintiff, Frank Brown, now appellee. A few months before Caraker and Brown had been photographed together by a photographer of the newspaper and when the print was cut in two and the individual pictures filed in the morgue, the names had been inadvertently *680 transposed so that the one of Brown reproduced in the publication in question bore the name of Caraker.
The newspaper published a retraction and apology.
After a pre-trial conference the case was tried before a jury which awarded the plaintiff a verdict of $1,500.
The question inherent in the controversy is the presence or lack of testimony supporting the judgment for the amount the jury fixed in view of the corrective statement the newspaper published and its efficacy under Section 770.02, Florida Statutes 1951, and F.S.A., which provides that where an honest mistake is made in the publication of news and within a stated period after notice given, pursuant to the preceding section, the paper publishes a retraction of certain specifications "then the plaintiff in such case shall recover only actual damages." (Italics supplied.)
The appellant contends that there was no evidence from which the jury could conclude that the appellee suffered "actual" damages to the extent of $1,500.
In Ross v. Gore, Fla., 48 So.2d 412, 414, we held the act constitutional and remarked that a plaintiff was deprived of no property rights when a retraction removed from his grasp punitive damages, which do not constitute compensation but serve only as a "deterrent to others inclined to commit a similar offense * * *." They were characterized as an allowance for "malice, moral turpitude, wantonness or outrageousness of tort." A prompt retraction when the mistake is brought home to the erring newspaper by the notice removes these elements from the plaintiff's action.
It was settled in the cited case that "actual damages" and "compensatory damages" are synonymous terms, and being such, a plaintiff after retraction may recover whatever sum will "compensate him for any harm sustained and remaining unsatisfied after the publication of the retraction." (Italics supplied.)
With these pronouncements in mind, as well as the admission of the plaintiff recited in the pre-trial order that he claimed no punitive, or exemplary, damages, or special damages we are prepared to explore the record for evidence forming a basis for actual damages to the amount the jury found.
As a preface to that excursion we should say that it is appellee's position that the article was libelous per se and that he was therefore entitled to "`general damages' which the law presumes to flow inevitably from the publication of a libel per se." To support the point he draws our attention to the decision in Cooper v. Miami Herald Publishing Company, 159 Fla. 296, 31 So.2d 382, where we held that a libelous publication is actionable per se; and to our opinion in Le Moine v. Spicer, 146 Fla. 758, 1 So.2d 730, that a written false or malicious charge is libelous per se, and to other cases of like import.
Adopting appellee's view that the article was both libelous and actionable per se, and taking into consideration the fact that many elements of resulting damage cannot be measured in dollars and cents with exactness, still there must be some foundation upon which the damage rests. It is not enough simply to say that the publication was libelous, and punitive damages have been eliminated, the amount of damage, as well as damage itself, follows as a matter of law. If such were the law juries would need to consider only the article before fixing the verdict in any amount that suited their fancy.
Appellant contends that although at common law it was unnecessary for a plaintiff who had been the victim of a libel per se to prove general damages as they were presumed to follow in contemplation of law, this rule has been changed by the statute confining recovery to "only actual damages". We do not agree. In Ross v. Gore, supra, we cited with approval the case of Osborn v. Leach, 135 N.C. 628, 47 S.E. 811 813, 66 L.R.A. 648, in which the North Carolina court defined "actual damages" as follows: "actual are compensatory damages, and include (1) pecuniary loss, direct or indirect, or special damages; (2) damages for physical pain and inconvenience; (3) damages for mental suffering; and (4) damages for injury to reputation." Continuing, the court remarked: "The law *681 infers actual or compensatory damages for injury to the feelings and reputation of the plaintiff from a libel calculated to humiliate him or injure his reputation or character." And further the court said, quoting Hale on Damages, "`Actual damages' are synonymous with `compensatory damages' and with `general damages.'" "General damages" were defined as "those which the law presumes must naturally, proximately, and necessarily result from the publication of the libelous matter. They arise by inference of law, and are not required to be proved by evidence. They are allowable whenever the immediate tendency of the words is to impair the plaintiff's reputation, although no actual pecuniary loss had in fact resulted, and are designed to compensate for that large and substantial class of injuries arising from injured feelings, mental suffering and anguish, and personal and public humiliation, consequent upon the malicious publication of the false and libelous matter."
So in effect the only element of damages eliminated by compliance with the statute is "punitive damages" and to this extent only is the common law changed.
From the appellee's own testimony we learn that he and the so-called bolita king were friendly, played golf and cards together on many occasions before and after the incident. Twice he even gave the bolita operator money to invest in bolita tickets. The appellee was asked how he felt when he learned of the publication of his picture over the name of Caraker and replied "I didn't like it." The issue of the paper containing the libelous article was dated 17 January 1952 and the appellee knew nothing about it until the following month.
This is the substance of the appellee's proof. He alone testified in chief and when he concluded he rested his case.
We have found nothing in this presentation to indicate that damage came to him from the mistake and no proof even that his feelings were injured except what could be drawn from the laconic remark that he "didn't like" the article.
After the appellant had offered its testimony the appellee introduced six witnesses on rebuttal and the substance of their testimony was that the reputation of the appellee was good before the publication and remained unimpaired.
Added to all this was the uncontradicted statement of the distributor of the Miami Herald in the district comprising Bartow, appellee's residence, and Fort Meade, his former home, that five copies of the paper were distributed in the former city 17 January 1952, and none in the latter.
From the simple facts we can come to only one conclusion, that the libelous article was actionable and that in the action based on it appellee wholly failed to show more than nominal damage. How can it be said that his reputation suffered when the witnesses of his choice swore it was good before and afterward? How can it be said that his sensibilities were shocked when he knew nothing about the article for a month and then the most emphatic reaction he could express was, "I didn't like it?"
We do not hold that in such circumstances a plaintiff need prove special damages; and we are fully aware of the inaccuracy in fixing general damages for injury to reputation, feelings and the like because the jury must, from the very nature of these elements, engage in speculation. But we do say that an award of substantial compensatory damages must be based on proof, and inasmuch as the plaintiff's own evidence overcomes the presumption of injury, we must conclude that he was entitled to no more than nominal damages.
We therefore reverse the judgment with directions to enter one for nominal damages unless the appellee can convince the trial court that at another trial he will be able to produce other evidence justifying a resubmission of the case to a jury.
Reversed.
ROBERTS, C.J., and TERRELL, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.