80 So.2d 669 (1955)
John WALSH, Appellant,
v.
The MIAMI HERALD PUBLISHING CO., a Florida corporation, Appellee.
Supreme Court of Florida. En Banc.
May 25, 1955.
Rehearing Denied June 20, 1955.
Eli Breger, Miami Beach, for appellant.
Edward E. Fleming, Miami, for appellee.
HOBSON, Justice.
The only question in this case is whether or not the amended complaint which was dismissed by the circuit court presented an actionable claim for libel per se.
The appellant Walsh, in his amended complaint alleged that on October 4, 1953, the defendant corporation did "falsely and maliciously publish" in its newspaper an *670 article, which is set out in full. We quote the pertinent parts as follows:
 "Comedy of Errors by Beach Police
 "By Stephen J. Flynn
 "Herald Staff Writer
"Miami Beach police can, and often do, make laughingstocks of themselves when they testify in court.
"They'll make reports detailing the evidence they might think pertinent to a case  and then do everything possible to disprove their own reports.
"Their superiors, apparently regard each fresh debacle as the fumblings of irrepressible, not-too-bright boys. There's nothing to show any court fiascos are investigated.
"And, there's never even a rumble from city hall to indicate that any notice is taken of the officers' confusion.
* * * * * *
"Oka acts, when he's on the bench, as though he puts little or no reliance in the testimony of Beach policemen.
"Such seemed his attitude Sept. 24 when an arresting officer, John Walsh, offered testimony exactly opposite his own report on an accident.
"Mrs. Norma Surkamp was killed after a taxi plunged off the 39th St. temporary bridge over Indian Creek, Walsh had reported that a car driven by Frank Martin of St. Petersburg had struck the cab, knocking it into the water.
"But when a hearing on a manslaughter charge against Martin came before Oka, Walsh actually pushed forward in his zeal to tell the Peace Justice that it was the taxi that struck Martin's car.
"With open reluctance, Oka released Martin from custody.
"Walsh's superiors apparently never inquired why he had told one story on his report and another in court. Nor did city hall ever order Walsh's superiors to make an investigation.
"Sometimes an officer will work hard to make an air-tight case to back up an arrest he's made.
"When that happens, some of his fellow-policemen laugh openly at him. They call him `The Dragnet Kid', and an `eager beaver.'
"More disquieting are the reports of the treatment of the seven or more officers who have criminal records. They're told their criminal pasts will be `exposed' if they `bear down too hard', so these rumors go.
"If city officials have ever investigated these reports, they keep quiet about it."
The amended complaint went on to allege that on October 7, 1954 a second article was "falsely and maliciously" published and this article, too, is set out in full. We will not reproduce any part of it here, because we are of the opinion that it is clearly not libellous as to appellant, and no useful purpose would be served in discussing it. We shall therefore confine our discussion to the article reproduced above.
Appellant's amended complaint continued with an allegation that in accordance with statute he had "notified defendant of the false statements contained in said articles and demanded a retraction thereof," but that none had been forthcoming. A copy of this notice was attached and made a part of the complaint. The notice thus referred to and incorporated by reference read in part as follows:
"Please consider this letter as a notice in writing to retract certain statements which appeared in the Miami Herald that were false and defamatory to me.
"The first article is entitled `Comedy of Errors by Beach Police' written by your staff writer Stephen J. Flynn, and appeared in the Miami Herald on October 4, 1953 on page 1B. The specific statements I refer to are contained in paragraphs 10, 11, 12, 13, 14 and 15 of said article, which read as follows:" (Here was reproduced the first six paragraphs *671 following the asterisks in the article which we have quoted above.)
It will be noted that the only allegation that the article itself was false appears in the notice which was incorporated by reference in the complaint. The previous allegation that the defendant corporation did "falsely * * * publish" the article is too indirect to be so construed. We think that a fair reading of the complaint with the incorporated notice leads to the conclusion that the appellant has suitably alleged only that he was libelled by the six paragraphs of the article following the asterisks, and that these six paragraphs were entirely false. Since no special damages are set out, libel per se must be found in these six allegedly false paragraphs, or the complaint must fall.
In Richard v. Gray, Fla., 62 So.2d 597, we stated the requirements for libel per se, and there is no reason to reiterate them here in full. So far as is relevant here, a publication is per se libellous if it tends to subject one to distrust, ridicule, contempt or disgrace, or tends to injure one in his trade or profession. The language of the publication declared upon should not be interpreted by extremes, but should be "construed as the common mind would naturally understand it." Richard v. Gray, supra, Budd v. J.Y. Gooch Co., 157 Fla. 716, 27 So.2d 72; Cooper v. Miami Herald Pub. Co., 159 Fla. 296, 31 So.2d 382.
The six paragraphs in question here, viewed in the light of the above principles, certainly impugn the credibility of appellant in stating that he offered testimony before the Justice of the Peace "exactly opposite" to his own report, that he "pushed forward in his zeal" to do it, and that the Justice acted as if he put little or no reliance in the testimony thus given. At the least, the matter contained in the six paragraphs under examination tended to subject appellant to distrust, and since it is part of the official duty of a policeman to testify, and ergo to testify truthfully, when called, a publication such as this tends to injure him in his trade. The language here is stronger and more specific than that which we held actionable per se in Metropolis Co. v. Croasdell, 145 Fla. 455, 199 So. 568, although the imputation is different. And even absent the element of injury to trade or profession, imputations of untruthfulness have been considered actionable per se. See Restatement of Torts, Chapter 24, Sec. 569, Comment g.
Appellee relies upon Mann v. Roosevelt Shop, Inc., Fla., 41 So.2d 894, holding that a "personal insult only" is not actionable. It does not appear from that case that there was any publication at all, and even if there were, the facts upon which the decision was predicated render it wholly inapplicable here. Appellee further relies upon the general rule stated in 33 Am.Jur., Libel and Slander, Sec. 154, that the publication of reports of judicial proceedings is conditionally privileged. But it is also stated in this section that "to be privileged, a report must be fair, impartial, and accurate. This statement merely means that the report of judicial proceedings must be correct * * *." We must not lose sight of the fact that the report is here alleged to be false.
With the volume of news which is gathered and printed, it would be incredible if all newspaper reports were accurate, and mistakes are logically to be expected. This is the reason for F.S. Secs. 770.01 and 770.02, F.S.A., making notice a condition precedent to an action for libel, and affording the newspaper an opportunity to retract false statements made in good faith. See Ross v. Gore, Fla., 48 So.2d 412. The proper statutory procedure was followed by appellant in the instant case, but the appellee has elected not to retract, and must therefore stand upon the accuracy of its statements.
Finally, appellee calls our attention to the case of Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295. The issue in that case was whether or not the defamatory statements actually impaired the judicial process to a degree which would warrant citation for contempt. That is not the issue in this case.
*672 It follows that the judgment appealed from must be, and it is hereby, reversed and the cause remanded for further proceedings not inconsistent with this opinion.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.
THOMAS and ROBERTS, JJ., dissent.
THORNAL, J., not participating.