**James P. CASWELL, Appellant,**

v.

**The MANHATTAN FIRE & MARINE INSURANCE COMPANY, Appellee.**

**No. 25166.**

United States Court of Appeals Fifth Circuit.

July 18, 1968.

graphic Register Co. v. Philip Hano Co., 1 Cir., 1952, 198 F.2d 208, exists in the diversity of the parties.

W. Paul Thompson, DeFuniak Springs, Fla., James E. Hertz, Pensacola, Fla., for appellant.

Robert P. Gaines, Pensacola, Fla., for appellee.

Before GOLDBERG, GODBOLD, and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

The defendant, Manhattan Fire & Marine Insurance Co., was granted summary judgment. James P. Caswell, plaintiff, appeals. This Florida diversity case arose out of an allegedly libelous report published by the National Board of Fire Underwriters (now the American Insurance Association) to various insurance companies.[1]

The district court granted summary judgment on the grounds that the report was not libelous per se [2] and that the record established defendant's affirmative defense of privilege. Hence, the issue of whether the report was false was treated as immaterial.

The report was published following a fire which destroyed a portion of Caswell's restaurant in DeFuniak Springs, Florida, and contained a detailed account of an investigation of the cause of the fire. The report concluded:

> In summary, it is noted that this fire is of incendiary origin, and because of the heavy financial obligations, including mortgages and delinquent rent as well as the drop-off of business, it appears to be financially desirable to the assured occupants. Suspicion is directed at JAMES P.

CASWELL because of these circumstances as well as his presence in the building at the time the fire was discovered, and because of the lie he told regarding the $900 claimed to be in the safe. There was nothing developed to in any way connect the owner of the building with the loss.

The complaint alleged the report was libelous in that it accused plaintiff of committing arson and of lying. Defendant's answer denied the libelous nature of the report and raised the affirmative defense of privilege. In the course of pre-trial discovery plaintiff sought a subpoena duces tecum directing the Chief Deputy Fire Marshal of the State of Florida to produce all records on Mr. and Mrs. Caswell. The district court granted the Fire Marshal's motion to quash the subpoena, holding that any information in his files of an investigatory nature is privileged and immune to the discovery process.

Of the several errors assigned on appeal we consider three to merit discussion: whether the report was libelous per se, whether the publications alleged in the complaint were privileged, and whether the district court erred in granting the Fire Marshal's motion to quash.

I

It is libelous per se under Florida law falsely to accuse another of the commission of a crime. LeMoine v. Spicer, 146 Fla. 758, 1 So.2d 730 (1941); see Richard v. Gray, 62 So.2d 597 (Fla. 1953) (en banc). The district court found the report summarized the physical evidence and statements from witnesses tending to show the fire was deliberately set and that plaintiff had an opportunity to set it and a motive for doing so. The court concluded, however, "the report contains the investigator's conclusion that suspicion is directed to-

1. The amended complaint alleged the National Board of Fire Underwriters acted as an agent of Manhattan Fire & Marine in conducting an investigation of a fire and publishing a report thereof. The allegation was denied in Manhattan's answer. Because of the view the district court took of the case it was unnecessary to rule on the existence of an agency relationship.

2. No special damages were alleged in the complaint.

ward the plaintiff," and "nowhere in the report is there a definite accusation that the plaintiff committed arson or any other crime." The report was held not libelous per se because there was no definite accusation of arson.

◼ Exercising our best judgment to determine what the courts of Florida would hold had they, rather than we, been presented this question,[3] we conclude the district court erred in holding the report was not libelous per se.

Although the investigator who authored the report concluded only that under the circumstances suspicion was directed toward the plaintiff, the suspicion was supported in the body of the report by a comprehensive outline of the evidence gathered during the investigation. The tentative nature of the conclusion cannot alter the natural inference to be drawn by any reader from the facts set out in the report.[4] Those statements of facts alone, if false, are sufficient to state a libelous charge of arson.

The Florida Supreme Court long ago held it is not necessary for a published statement unequivocally to charge the crime of arson to be actionable per se. In Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887), that court held the following statement actionable per se:

> We have recently been defending a suit brought against this association by a citizen of Micanopy, who lost his stock of goods by fire during last October. There were circumstances which satisfied the board of directors that the fire was not accidental; consequently we did not feel that we had the right to assess the members of this association to pay what we had reason to believe a fraudulent loss.

A contention that this statement was no more than an opinion or suspicion was rejected. We conclude, therefore,

that under Florida law the report, if false and not privileged, contained a libelous charge of arson and is actionable without allegation or proof of special damages.

The complaint further alleged Caswell was libeled by the statement in the report that he lied about the $900 claimed to be in a safe at the time of the fire. Relying on Wade v. Sterling Gazette Co., 56 Ill.App.2d 101, 205 N.E.2d 44 (1965), the district court held a published statement which charges only that a person lied on one occasion is not libel per se.

◼ In Richard v. Gray, supra, the Florida Supreme Court stated the general rule

> that a publication is libelous per se, or actionable per se, if, when considered alone without innuendo: * * * (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace.

Id. 62 So.2d at 598. The general rule was applied in Walsh v. Miami Herald Publishing Co., 80 So.2d 669 (Fla.1955) (en banc). In *Walsh* the defendant newspaper published an account of a policeman's testimony in court which was said to be "exactly opposite" to his own official report of an accident. The newspaper account referred only to this single instance of lying. Construing the account "as the common mind would naturally understand it," Cooper v. Miami Herald Publishing Co., 159 Fla. 296, 31 So.2d 382 (1947), the Florida court held the libel was actionable per se because it tended to subject the officer to distrust. Although the court made reference to the fact that part of the plaintiff's duties as a police officer was to testify in court, and the libel would thus tend to injure him in his trade, it was pointed out that "even absent the element of injury to trade or

---

3. See generally, 1A Moore, Federal Practice ¶0.309 [2] (2d ed. 1965); Wright, Federal Courts § 58 (1963).

4. See 1 Harper & James, Torts § 5.10, at 379 (1956):

> "While it is not necessary that a person should have made the charge of crime with nicety or in technical terms, nevertheless if there is not a clear imputation of guilt, the words are not slanderous per se."

profession, imputations of untruthfulness have been considered actionable per se. See Restatement of Torts, Chapter 24, Sec. 569, Comment g." 80 So.2d at 671. Such an observation, in a case involving but a single charge of lying, supports our conclusion the Florida Court would reject the doctrine espoused in Wade v. Sterling Gazette Co., supra.

Thus, as we view the Florida authorities the allegations of Caswell's complaint are sufficient to state a claim of libel per se.

## II

A second basis for the grant of summary judgment was the district court's conclusion that the publications alleged in the complaint were privileged. In the leading case of Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 592, 10 L.R.A.,N.S., 1051 (1906), the court stated the Florida view of privilege:

A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right, or duty, and made upon an occasion to properly serve such right, interest, or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right, or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.

\* \* \* \* \* \*

In determining whether or not a communication is privileged, the nature of the subject, the right, duty, or interest of the parties in such subject, the time, place, and circumstances of the occasion, and the manner, character, and extent of the communication, should all be considered.

See also Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12 (1942); O'Neal v. Tribune Co., 176 So.2d 535 (Fla.App.1965). On the scope of the privilege in Florida, compare Teare v. Local Union No. 295 of the United Ass'n of Journeymen & Apprentices of Plumbers & Pipe Fitters, Industry, etc., 98 So.2d 79 (Fla.1957) (communication from union business agent to employer of nonunion plumber not privileged), and Merriman v. Lewis, 141 Fla. 832, 194 So. 349 (1940) (employer's report to surety company not privileged), with Johnson v. Finance Acceptance Co., 118 Fla. 397, 159 So. 364 (1935) (letter from finance company to client concerning unethical practices of another company held privileged).[5]

For a communication to be privileged it is necessary that both the communicating party and the receiving party have an interest worthy of protection in its subject matter. There can be no doubt that the National Board of Fire Underwriters had an interest in warning at least some and perhaps all of its member insurance companies of potential risks in insuring an individual against fire loss. Nor can there be any doubt as to the interest of at least some member companies in receiving such information. The district court predicated its finding of privilege on the fact that publication was by Manhattan or its agent to other insurance companies and concerned the desirability of Caswell as an insurance risk. On the present state of the record, we are unable to conclude whether the publications were privileged.

The amended complaint alleges nine instances of publication to five named insurance companies. The record contains nothing to indicate the nature of the interest of these companies in the

5. Abraham v. Baldwin, supra, considers the circumstances surrounding the communication and the manner and extent of publication as relevant factors on the question of privilege. In Newell, Libel and Slander, § 627 (3d ed. 1914), it is said:

"Where a large number of persons have an interest more or less remote in the matter, a person will not be privileged in informing them all, by circular or otherwise, unless there is no other way of effecting his object."

report. Certainly member companies insuring against fire loss in the DeFuniak Springs area would have a legitimate interest. Perhaps any such company operating in Florida would have a protectible interest. But nothing in the record demonstrates whether any or all of the named companies fall within such a category. Should any of the companies to whom the report was published not have a legitimate interest in the contents of the report, appellee's claim of privilege must fail. Privilege is not governed by geographical limitations alone. On remand the various factors outlined in the statement from Abraham v. Baldwin quoted above and others that the district court may find relevant should be considered to determine whether the publications were privileged and, if privileged, whether for any reason the privilege was abused.

### III

Caswell obtained a subpoena duces tecum directing the Chief Deputy Fire Marshal of Florida to appear for the taking of his deposition and to have in his possession "all of his records * * * in regard to Mr. and Mrs. James P. Caswell." The district court granted the Fire Marshal's motion to quash holding that "information reposing in his official files of an investigatory nature is confidential and is immune from process to the same extent as police reports." The quashing of the subpoena is assigned as error on appeal.

■ Manhattan contends we are without jurisdiction to review this question. We disagree. Although an order granting or denying a motion to quash a subpoena is normally considered interlocutory and not subject to review by immediate appeal, such an order, like other discovery orders, may be assigned as error on appeal from a final judgment on the merits. See Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 992 (1961). A nonparty may appeal an order denying his motion to quash when under the circumstances he would be otherwise denied an effective mode of review. Carter Products, Inc. v. Eversharp, Inc., 360 F.2d 868 (7th Cir. 1966); Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). Compare Robinson v. Bankers Life & Cas. Co., 226 F.2d 834 (6th Cir. 1965). An order requiring a nonparty to produce documents often will be final insofar as the nonparty is concerned. Moreover in many cases substantial prejudice may result from denying immediate appellate review. Cf. Overby v. United States Fidelity & Guaranty Co., 224 F.2d 158 (5th Cir. 1955). On the other hand a party seeking discovery by way of a subpoena duces tecum is in a different position. An order quashing the subpoena does not terminate the proceeding as to him, and he has no alternative but to await the entry of a final judgment and assert the denial of discovery as error on appeal or cross-appeal. See generally 4 Moore, Federal Practice ¶ 26.37 [6] (2d ed. 1967).

■ In our opinion a party should not be precluded from review on appeal from a final judgment of an order quashing his subpoena duces tecum simply because the subpoena was directed to a nonparty. Accordingly, we hold this Court has jurisdiction to review the question. Our examination of the Florida statutes and cases leads us to the conclusion the records are not privileged.

In general "all state, county and municipal records shall at all times be open for a personal inspection of any citizen of Florida, and those in charge of such records shall not refuse this privilege to any citizen." Fla.Stat.Ann. § 119.01 (1960). However, "all public records which presently are deemed by law to be confidential or which are prohibited from being inspected by the public, whether provided by general or special acts of the legislature or which may hereafter be so provided, shall be exempt from the provisions of this section." Fla.Stat.Ann. § 119.07 (Supp.1968).

■ The Florida legislature has chosen to grant a privilege from public

disclosure of some records of state agencies. For example accident reports filed with the Department of Motor Vehicles "shall be for the confidential use of the department * * * [and] no such report shall be used as evidence in any trial * * *." Fla.Stat.Ann. § 317.171 (Supp.1968). The same rule applies to accident reports filed with municipal agencies. Fla.Stat.Ann. § 317.191 (Supp. 1968). Information gathered by the Florida Air and Water Pollution Control Commission relating to secret processes, methods of manufacture or production "shall not be disclosed in public hearing[s]," but may be used "in judicial proceedings in connection with the prosecution of violations of [the] act." Fla. Stat.Ann. § 403.111 (Supp.1968). Reports of the clerk of the sentencing court, the prosecuting attorney and the probation officer concerning mentally disordered sex offenders "shall be confidential and shall be available only to public officers and employees in the performance of a public duty." Fla.Stat.Ann. § 917.12(5) (Supp.1968).

The legislature has accorded no such privileged status to investigation reports of the State Fire Marshal. Pertinent statutory sections governing reports of the Fire Marshal are set out in the margin.[6] No section contains even a hint that the reports are privileged. In light of the existence of specific statutory privileges for reports of other state agencies, we conclude the Florida legislature has chosen not to confer such status on reports of the Fire Marshal.

The courts have recognized that public policy may require restrictions on the right to inspect public records. See Patterson v. Tribune Co., 146 So.2d 623 (Fla.App.1962).

The right of inspection does not extend to all public records or documents, for public policy demands that some of them, although of a public nature, must be kept secret and free from common inspection, such for example as diplomatic correspondence and letters and despatches [sic] in the detective police service or otherwise relating to the apprehension and prosecution of criminals.

Lee v. Beach Publishing Co., 127 Fla. 600, 173 So. 440, 442 (1937); see also 1957 Fla.Ops. Att'y Gen. 057–157 (June 10, 1957); 1958 Fla.Ops. Att'y Gen. 058–156 (May 9, 1958). While certain records of the Fire Marshal may be analogous to investigative police reports, the Florida courts have not extended the public policy exception to the Fire Marshal's records.[7]

In the absence of statutory privilege, and in light of a general policy favoring public inspection of government records, we conclude the district court erred in quashing Caswell's subpoena duces

---

6. Fla.Stat.Ann. § 633.03 (1960 & Supp. 1968):
    "The state fire marshal shall investigate the cause, origin, and circumstances of every fire occurring in this state wherein property has been damaged or destroyed where there is probable cause to believe that the fire was the result of carelessness or design. Report of all such investigations shall be made on approved forms to be furnished by the state fire marshal." Fla.Stat.Ann. § 633.111 (Supp.1968):
    "The state fire marshal shall keep in his office a record of all fires occurring in this state upon which he had caused an investigation to be made and all facts concerning the same, such as the damage caused thereby, whether such losses were covered by insurance, and to what amount. Such records shall be made daily from the reports furnished him by his deputies, or others."

7. The policy of access to government records may be of sufficient force to require access be granted where if the records were private they would not be accessible. Thus in Shell v. State Road Dept., 135 So.2d 857 (1961), where information was sought from a state agency, the Florida Supreme Court created an exception to the generally recognized privilege accorded "work product." The Court observed that "as a matter of fact the files of a governmental authority are subject to inspection by the public generally at all reasonable hours." Id. at 860 n. 1.

tecum on the ground the information sought was privileged.[8]

The judgment of the district court granting summary judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

---

8. The question of privilege being the only issue before us, we express no view whether it would have been proper to quash the subpoena for any other reason, see generally 5 Moore, Federal Practice,

¶ 45.05[2] (2d ed. 1968), and leave the matter to the district court should the question arise in the course of further proceedings.