Joseph H. Davis, M. D. Chairman Medical Examiners' Commission Miami
QUESTIONS:
1. Are records which are otherwise privileged and confidential and thus exempt from public disclosure required to be made public by the fact that they are received pursuant to the Medical Examiners Act, ss. 406.12, 406.13, and 406.14, F. S.?
2. Do medical examiners' records, prepared pursuant to Ch. 406, F. S., of deaths under active investigation and felt to be caused by criminal conduct fall under the exception to Ch. 119, F. S., recognized for `police investigative records'?
SUMMARY:
Autopsy reports made pursuant to law are public records which must be made available for public inspection and examination unless exempted by special act. If not exempted from disclosure by special act, an autopsy report may be kept confidential only to the extent necessary to ensure that a criminal investigation would not be significantly impeded and enable violators of the criminal laws to escape detection and apprehension. Documents or records made confidential by statute do not lose such status upon receipt by the medical examiner.
Because these questions are interrelated, they will be addressed together. Your request has been prompted by a demand pursuant to Florida's Public Records Law, Ch. 119, F. S., to inspect and examine a particular file maintained by the Dade County Medical Examiner which contained specific and detailed information concerning a highly publicized murder. Included in the file was information concerning the murder weapon, time and place of the murder, identification of tools and instruments employed in the disposal of the body, the presence or absence of drugs used to immobilize the victim, presence or absence of evidence of physical torture prior to death, and presence or absence of mutilation of the body after death. Additionally, included in the file were letters and documents from investigative police files forwarded to the medical examiner pursuant to ss. 406.13 and 406.14, F. S., and hospital records of the victim filed pursuant to s. 406.12, F. S.
This office has previously stated in an informal opinion to Courtland Berry, dated August 21, 1974, that autopsy reports are public records which are not exempt as a class from the mandatory inspection requirements of s. 119.07(1), F. S. In AGO 076-156 this office expressed the view that the `police secrets rule' does not serve to exempt records such as arrest records, autopsy reports, business records, copies of informations and indictments and the like from s. 119.07(1). However, this conclusion was framed in relation to the question posed which included autopsy reports and other records compiled by and in the possession of the state attorney which do not result in a criminal prosecution. Your specific question, however, deals with an active ongoing police investigation into a probable homicide.
As contemplated by s. 406.11, F. S., it is the responsibility of the medical examiner to determine cause of death and to make and have performed such examinations, investigations, and autopsies as he shall deem necessary or shall be requested by the state attorney when, inter alia, any person dies in a manner prescribed by s. 406.11(1)(a)1.-12. Compare s. 925.09, F. S., empowering the state attorney to have an autopsy performed, before or after interment, when he decides it is necessary in determining whether or not death was the result of a crime. Pursuant to s. 406.14, F. S., law enforcement officers assigned to and investigating a death have a duty to maintain liaison with the medical examiner `. . .during the investigation into the cause of death.' (Emphasis supplied.)
Upon receipt of a notification filed pursuant to s. 406.12, F. S., the district medical examiner or his associate shall examine or otherwise take charge of the dead body. Section 406.13, F. S. When the cause of death has been established within a reasonable medical certainty by the district medical examiner or his associate, he shall so report or make available to the state attorney in writing his determination as to the cause of said death. Id. However, duplicate copies of records and the detailedfindings of autopsy and laboratory investigations shall bemaintained by the district medical examiner. Id. Any evidence or specimen coming into the possession of the medical examiner in connection with any investigation or autopsy may be retained by him or be delivered to one of the law enforcement officers assigned to the investigation of the death. Id.
Thus, `autopsy reports' are required to be made and maintained by the operation of s. 406.13, F. S. As such, they clearly fall within the definition of public record found at s. 119.011(1), F. S., which encompasses in pertinent part all records, documents, or other material `. . . made or received pursuant to law . . . .' The only question that remains, therefore, is whether any exemption exists which would permit such `detailed findings of autopsy' required by law to be maintained by the district medical examiner
to be kept confidential pursuant to s. 119.07(2)(a), F. S.
In AGO 068-27, this office concluded that autopsy reports performed by a county medical examiner at the request of a state attorney were not to be released to a personal representative of the deceased. The opinion relied heavily on `public policy' considerations for keeping such reports confidential and a New York decision, People v. Preston, 176 N.Y.S.2d 542 (Ct.App. 1958), which construed a provision of the New York City Charter which provided that autopsy reports be kept confidential and not available for public inspection. In Preston there was no indication that dissemination of the autopsy report would `significantly impair or impede the enforcement of the law or enable violators to escape detection' (see AGO 075-9), but rather that confidentiality of the report was necessary in order to protect the rights of the accused. But see Westchester Rockland Newspapers, Inc. v. Mosczydlowski, 388 N.Y.S.2d 199 (N.Y.App. 1976), requiring disclosure of a report concerning a death in a city detention facility. In the instant case, however, we are faced with a far different situation. The absence of a legislative exception which would serve to make such reports confidential and public policy considerations which relate not to the rights of the accused but rather to the rights of the general public and the need to detect and apprehend violators of the criminal law.
While the Legislature has not made autopsy reports confidential by general law, it has addressed the subject in related general laws and special acts. For example, Ch. 27439, 1951, Laws of Florida, provides that:
 . . . the records, files and information kept, retained or obtained by the County Medical Examiner [of Broward County] under the provisions of this Act shall be confidential and privileged, unless released under and by the direction of the Assistant State Attorney or County Solicitor.
Chapter 59-1242, Laws of Florida, relating to the medical examiner of Duval County makes `. . . records, files and information kept by county medical examiner confidential and privileged unless released under and by the direction of the state attorney.' Alsosee, e.q., s. 10, Ch. 63-1142, Laws of Florida, (confidentiality of records of Brevard County medical examiner); s. 9, Ch. 59-1381, Laws of Florida, (confidentiality of records of Indian River County medical examiner); s. 12, Ch. 67-1704, Laws of Florida, (confidentiality of records of Martin County medical examiner and his assistants); s. 9, Ch. 31063, 1955, (confidentiality of records of Orange County medical examiner); s. 5, Ch. 61-2640, Laws of Florida, (confidentiality of records of Palm Beach County medical examiner); and s. 9, Ch. 31270, 1955, Laws of Florida, (confidentiality of records of Sarasota County medical examiner). An examination of the remaining special acts relating to the powers and duties of the medical examiners fail to disclose similar confidentiality provisions. Hence, it could be persuasively argued that, prior to 1970, autopsy reports were either public or confidential depending upon the county in which the autopsy was performed. However, in 1970, the Legislature enacted s. 11, Ch. 70-232, Laws of Florida, which superseded all parts of statutes, general laws, and special acts with which it may be in conflict. The obvious purpose was an attempt by the Legislature to impose certain minimum uniform procedures by enactment of the Medical Examiners Act, Ch. 70-232.
It is a basic rule of statutory construction that repeals by implication are not favored and will not be deemed to have been intended unless that intention is clearly manifest. State v. Gadsden County, 58 So. 232 (Fla. 1912). Before a court may declare that one statute impliedly repeals another, it must appear that there is a positive repugnancy between the two or that the last was clearly intended to prescribe the only governing rule or that it revises the subject matter of the former. Sweet v. Josephson,173 So.2d 444 (Fla. 1965). While it could be argued that Ch. 406, F. S., constitutes an implied repeal of the confidentiality provisions of the special acts set forth above, I believe the better approach is to conclude that Ch. 406 is not in direct and absolute repugnancy with the special acts since it does not specifically address the question of confidentiality. Thus, the special acts, insofar as they mandate confidentiality of autopsy reports in the counties set forth above, constitute statutory exceptions to s. 119.07(2)(a), F. S., which were not impliedly repealed by the enactment of Ch. 406.
As further evidence that the Legislature did not intend all autopsy reports to be confidential, I would note s. 827.07(4)(b), F. S., Ch. 77-429, Laws of Florida, effective October 1, 1977. This section provides that autopsy reports maintained by the medical examiner which resulted from suspected instances of child abuse or maltreatment, shall not be subject to the confidentiality requirements imposed under the Child Abuse Act, Ch. 827, F. S.
In other words, such autopsy reports maintained by the medical examiner are, at least implicitly, intended to be part of the public records of that office.
The only exemption which could arguably serve to exempt autopsy reports as a category of records from s. 119.07(1), F. S., is the principle commonly known as the `police secrets rule.' See Lee v. Beach Publishing Co., 173 So. 440, 442 (Fla. 1937); Patterson v. Tribune Co., 146 So.2d 623 (2 D.C.A. Fla., 1962); and Caswell v. Manhattan Fire and Marine Ins. Co., 399 F.2d 417 (5th Cir. 1968). As stated in AGO 075-9, this exception is applied only where the effect would be to significantly impair or impede the enforcement of the law and enable violators to escape detection. It would appear that in certain unusual cases, the medical examiner's autopsy report could contain information which if disclosed would defeat the very purpose of the report. Under such circumstances it would appear that the medical examiner could be justified in withholding those portions of the report which, if publicized, would significantly impair the ability of law enforcement officers to apprehend those suspected of committing the crime. This is not to say that the entire report should be suppressed until an investigation is complete; rather, only those portions of the report which would clearly fall within the rule could be withheld until such time as its release would not endanger a pending investigation. Cf. AGO 073-51. However, I would anticipate that such procedures would be necessary in relatively few cases.
This conclusion is also supported by the recent decision in Stateex rel. Veale v. City of Boca Raton, 353 So.2d 1194 (4 D.C.A. Fla., 1977), in which the court refused to extend the police secrets rule which `arguably exists' under Lee v. Beach Publishing Co., 173 So. 440 (Fla. 1937), and Patterson v. Tribune Co.,146 So.2d 623 (2 D.C.A. Fla., 1962), to a report concerning suspected irregularities in the city's building department prepared by an assistant city attorney and city prosecutor and forwarded to the state attorney for further inquiry. The word `arguably' was apparently utilized by the district court due to the fact that the rule has its basis in common law rather than statute. See Wait v. Florida Power and Light Company, 353 So.2d 1265 (1 D.C.A. Fla., 1978), holding that s. 119.07(2)(a), F. S., `. . . clearly waivesany common law privileges of confidentiality . . . . This section exempts only those records expressly provided by general or special law to be confidential. . . .' (Emphasis supplied.) In holding the report not exempted from public disclosure, the court cited with approval Caswell v. Manhattan Fire and Marine Ins. Co.,399 F.2d 417 (5th Cir. 1968). Also see s. 455.08, F. S., making investigative records made or received by a board or agency in the Department of Professional and Occupational Regulation confidential until a finding of probable cause.
Moreover, recent decisions in other jurisdictions have held autopsy reports and similar or related information available for public inspection notwithstanding public policy arguments against disclosure. see, e.g., Matter of Rome Sentinel Co. v. Boustedt,252 N.Y.S.2d 10 (N.Y.App.Ct. 1964); Meriden Record Co. v. Browning, 294 A.2d 646 (Conn.App. 1971); Denver Publishing Co. v. Dreyfus, 520 P.2d 104 (Colo. 1974); Evansville-Vanderburgh C.D.H. v. Evansville P.C., 332 N.E.2d 829 (Ind.Ct.App. 1975);378 N.Y.S.2d 894 (N.Y.App.Ct. 1975); and Westchester Rockland Newspapers, Inc. v. Mosczydlowski, supra. In concluding that autopsy reports must be made available for public inspection subject to the limitations contained herein, I have not overlooked the recent decision in City of Tampa v. Harold, 352 So.2d 944 (2 D.C.A. Fla., 1977), which held that a widow seeking pension benefits from a city had no right under s. 119.01, F. S., to receive a copy of a homicide report concerning the death of her late husband. This report, however, was apparently prepared by the city police and was part of an active investigatory file. This office concurs in the view expressed in that decision that `. . . police reports are ordinarily confidential,' only to the extent that the reports fall under the exception recognized in Lee,supra. The type of police information which ordinarily would be considered confidential under Lee would include, for example, synopses of purported confessions, officers' speculations on a suspect's guilt, officers' views on credibility of witnesses, statements by and names of informants, ballistics reports, fingerprint comparisons and blood or other laboratory tests.
In sum, autopsy reports made pursuant to law are public records which must be made available for public inspection and examination unless exempted by special act. If not exempted from disclosure by special act, an autopsy report may be kept confidential only to the extent necessary to ensure that a criminal investigation would not be significantly impeded and enable violators of the criminal laws to escape detection and apprehension. Documents or records made confidential by statute do not lose such status upon receipt by the medical examiner. See, e.g., ss. 458.16, 794.03, and 827.07(7), F. S. To the extent AGO 068-27 is in conflict with this opinion, it is hereby receded from.
Prepared by: Sharyn L. Smith, Assistant Attorney General