719 So.2d 967 (1998)
CENTRO NAUTICO REPRESENTACOES NAUTICAS, LDA., a Portuguese Limited Partnership; and Caravelle Boats, Inc., a Georgia corporation, Appellants,
v.
INTERNATIONAL MARINE CO-OP, LTD., a Florida Limited Partnership, Appellee.
Nos. 97-0548, 96-3885.
District Court of Appeal of Florida, Fourth District.
October 14, 1998.
Rehearing and Clarification Denied November 20, 1998.
*968 John Beranek of Ausley & McMullen, Tallahassee, and William F. Cobb and Patricia S. Sechan of Barnett & Barnard, P.A., Fort Lauderdale, for appellants.
Terrence P. O'Connor and Gus H. Carratt of Morgan, Carratt and O'Connor, P.A., Fort Lauderdale, for appellee.
FARMER, Judge.
In this multifaceted litigation between a manufacturer, a distributor, and a retailer of boats, the primary questions engaging our attention deal with future damages for breach of an oral contract between the manufacturer and distributor for the sale of boats, and claims for intentional interference with that oral contract and defamation by the retailer. Finding the critical issues sufficiently preserved, we reverse the breach of contract damage award against manufacturer and affirm the damages awards against retailer.
The oral contract between manufacturer and distributor had no specified duration. For two years manufacturer supplied boats under it to distributor. When manufacturer notified distributor that it was terminating the agreement, it agreed to fill any pending orders for a period of 30 days. No such orders were made, however, and the notice thus ended the relationship. The jury found that manufacturer had breached the agreement by virtue of the termination and the *969 reasonability of notice thereof, and awarded damages calculated on past sales for a period of 5 to 7 years in the future.
We agree with manufacturer that no evidence or legal theory supports this award. UCC section 672.201 limits enforcement of oral contracts captured by the statute of frauds to only goods for which payment has been made or that have actually been received and accepted.[1] In this case, the evidence is clear that payment had been made for all boats received and accepted, and distributor did not seek compensation for any alleged nonconformity of those boats.
Distributor's theory of liability against manufacturer for terminating this oral contract without a specified duration was that in the fullness of time it had become a valuable business asset and that the termination deprived it of that asset. The first problem with this argument has to do with the applicable statutes of frauds. An oral contract to supply boats for an indeterminate period is captured by both the UCC statute of frauds barring enforcement of oral contracts for goods in excess of $500[2] and by the general statute of frauds barring enforcement of oral agreements not intended to be performed within the space of one year.[3] The evidence was that more than $500 worth of boats were involved and that the parties intended the oral agreement to last for 5 or 7 years or forever. Except for goods already sold, as we have just seen, such an unwritten agreement is unenforceable. Viscito v. Fred S. Carbon Co., 23 Fla. L. Weekly D2034, 717 So.2d 586 (Fla. 4th DCA 1998); Chong v. Milano, 623 So.2d 536 (Fla. 4th DCA 1993). Because the parties had long since passed the $500 and 1 year benchmarks, as a matter of law there was no right to reasonable notice of termination because the agreement was unenforceable beyond those two points.
Without an agreement in writing specifying a term and then an attempted unjustified termination before that term has elapsed, moreover, distributor has no valid claim for future damages in lost profits under an oral contract terminable at will. See Park Benziger & Co. v. Southern Wine & Spirits, 391 So.2d 681 (Fla.1980) (where no termination date existed for oral contract under which distributor had been exclusive distributor of whiskey for nearly eight years, contract was terminable at will by either party). It was error to let this part of the jury verdict stand.
We now proceed to distributor's claims against retailer. After distributor had entered into the oral contract with manufacturer, distributor then entered into a written contract with retailer who sold boats made by manufacturer to ultimate consumers in Europe. This written contract specified a duration of two years. During this period, there was an ongoing dispute about the prices charged to retailer by distributor, the contract being silent on the price. Nearly a month before the contract would have terminated by its own terms, retailer told distributor that it was terminating the arrangement. This happened at a boat show during a meeting between all three parties: manufacturer, distributor and retailer. In this conversation, retailer also said in the presence of manufacturer that "we no longer trust [distributor] and don't believe [that distributor] is an honest company." After this conversation, manufacturer terminated its own oral agreement with distributor.
Distributor sued retailer for breach, tortious interference, and defamation. All theories were submitted to the jury, which *970 awarded damages for breach, damages for tortious interference, and damages for the defamation, including punitive damages. We affirm the judgment on the jury verdict as to these awards.[4]
As to the tortious interference claim, retailer argues first that it was barred by the economic loss rule. See HTP, Ltd. v. Lineas Aereas Costarricenses, 685 So.2d 1238 (Fla.1997). We agree with the second district that in this kind of circumstance the tort of interference with prospective advantage is sufficiently independent to withstand the economic loss rule. See Bankers Risk Management Serv., Inc. v. Av-Med Managed Care, Inc., 697 So.2d 158 (Fla. 2d DCA 1997). We also reject retailer's argument that it was privileged as a matter of law to compete with distributorwho was, after all, bound by its own contract with distributor for manufacturer's business. The jury could have reasonably concluded from the evidence in this case, especially from the relationship under the written contract between distributor and retailer, that retailer could not properly and in good faith have caused manufacturer to terminate its arrangement with distributor simply to set up its own relationship with manufacturer at more favorable prices. We also agree that the jury could have found the termination and remarks by retailer to be a thinly disguised effort to cause manufacturer to cease supplying boats to distributor.
As to the defamation claim, retailer argues that the statement ("we do not believe [distributor] is an honest company") is not defamatory or actionable and, in any event, would not support an award of punitive damages. The cases hold, however, that words tending to disparage one in the exercise of one's business, or accusing one of dishonesty in one's business are clearly actionable. See Walsh v. Miami Herald Pub. Co., 80 So.2d 669, 671 (Fla.1955) (imputations of untruthfulness have been considered actionable per se); Rety v. Green, 546 So.2d 410, 423 (Fla. 3d DCA) (victim may recover consequential business damages for defamatory falsehood prejudicing him in trade or business), rev. denied sub nom. Southern Commodity Corp. v. Rety, 553 So.2d 1166 (Fla.1989). It is indisputable that the words, "not an honest company," could reasonably imply that distributor was dishonest.[5] It was for the jury to decide the sense in which the words were meant by the speaker. Wolfson v. Kirk, 273 So.2d 774, 778 (Fla. 4th DCA 1973) (where a communication is ambiguous and is reasonably susceptible of a meaning which is defamatory, it is for the trier of fact to decide whether or not the communication was understood in the defamatory sense).
Retailer next argues that the allegedly defamatory words constituted a pure statement of opinion, rather than fact. It points especially to the words "we don't believe" as indicating an opinion instead of a positive assertion. Retailer hopes to fall within the passage in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), where retailer argues that the Court suggested that all statements of opinion are categorically not actionable.[6] In rejecting that understanding of the Gertz dictum, however, we expressly rely on Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, *971 111 L.Ed.2d 1 (1990), where the Court more recently said:
"we do not think this passage from Gertz was intended to create a wholesale defamation exemption for anything that might be labeled `opinion.' See Cianci [v. New Times Publishing Co., 639 F.2d 54, 62, n. 10 (C.A.2 1980)] (`The `marketplace of ideas' origin of this passage `points strongly to the view that the `opinions' held to be constitutionally protected were the sort of thing that could be corrected by discussion'). Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of `opinion' may often imply an assertion of objective fact.
"If a speaker says, `In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, `In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, `Jones is a liar.' As Judge Friendly aptly stated: `[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words `I think.' It is worthy of note that at common law, even the privilege of fair comment did not extend to `a false statement of fact, whether it was expressly stated or implied from an expression of opinion.' Restatement (Second) of Torts, S 566, Comment a (1977)." [emphasis supplied, citations omitted]
497 U.S. at 18-19, 110 S.Ct. 2695; see also Florida Medical Center, Inc. v. New York Post Co., 568 So.2d 454 (Fla. 4th DCA 1990). Here the jury could have found the words "we do not believe" to constitute an attempt to mask a positive assertion of dishonesty and to have been disingenuous.
Retailer also argues that punitive damages are unsupported by malice and are legally excessive. In this instance, however, retailer has failed to preserve this issue for our review. Retailer utterly failed to raise this subject at all in its post trial motion. Indeed the motion does not even mention the subject of punitive damages. It is necessary to present a post verdict attack on the legal propriety of punitive damages initially to the trial judge in order to have us review it. Nordyne, Inc. v. Florida Mobile Home Supply, Inc., 625 So.2d 1283, 1285 (Fla. 1st DCA 1993); see also Ruth v. Sorensen, 104 So.2d 10 (Fla.1958); Southern American Fire Ins. Co. v. Rinzler, 324 So.2d 133 (Fla. 1st DCA 1975); Winnemore v. Morton, 214 So.2d 509 (Fla. 4th DCA 1968); Mr. Land, Inc. v. Rabinowitz, 134 So.2d 859 (Fla. 3d DCA 1961). That was not done here, and thus we have no authority to consider it for the first time.
Finally, as to attorney's fees we follow prior precedent of this court and again hold that a contingency risk multiplier cannot be used when the right to fees is based on a contract. Command Credit Corp. v. Mineo, 664 So.2d 1123 (Fla. 4th DCA 1995). Therefore we reverse the award of fees as to the amount. As we have done before, however, we also certify to the supreme court the question:
Is a contingency risk multiplier inapplicable to a court awarded attorney's fee where the only authority for fees is predicated on a contractual provision and not a statute?"
U.S.B. Acquisition Co. v. Stamm, 695 So.2d 373 (Fla. 4th DCA 1997), rev. granted, Bell v. U.S.B. Acquisition Co., Nos. 90,321 and 90,426, 703 So.2d 475 (Fla. Dec. 12, 1997).
We find no error in any of the other issues presented.
DELL and SHAHOOD, JJ., concur.
NOTES
[1] See § 672.201(3)(c), Fla. Stat. (1997) ("A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable ... with respect to goods for which payment has been made and accepted or which have been received and accepted (s.672.606))."
[2] § 672.201(1), Fla. Stat. (1997) ("Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought....").
[3] § 725.01 Fla. Stat. (1997) ("No action shall be brought whereby to charge ... the defendant ... upon any agreement that is not to be performed within the space of 1 year from the making thereof....").
[4] Retailer does not appeal the breach of contract award.
[5] We of course apply the "common mind" rule: i.e., allegedly defamatory words are considered "as the `common mind' would naturally have understood them." Adams v. News-Journal Corp., 84 So.2d 549 (Fla.1955); Walsh v. Miami Herald Pub. Co., 80 So.2d 669 (Fla.1955).
[6] In the passage in question, the Court said:

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in `uninhibited, robust, and wide-open' debate on public issues. New York Times Co. v. Sullivan, 376 U.S. 254, at 270, 84 S.Ct. 710 at 721, 11 L.Ed.2d 686 (1964). They belong to that category of utterances which `are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)."
418 U.S. at 339-40, 94 S.Ct. 2997.