**UNITED STATES, Appellant,**

v.

**George R. HARROD, Appellee.**

No. 79–931.

District of Columbia Court of Appeals.

Argued En Banc May 13, 1980.

Decided Feb. 24, 1981.

William J. Bowman, Asst. U. S. Atty., Charles F. C. Ruff, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., for appellant.

John A. Shorter, Jr., Washington, D. C., filed the Petition for Rehearing En Banc for appellee.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

█ The sole issue before us is whether the trial court's order requiring a complaining witness in a criminal case to undergo a psychiatric exam is a "final order" within D.C.Code 1973, § 11–721(a)(1). If it is not, this court has no jurisdiction to entertain an appeal from that order. The government contends that the special facts of this case place it within a special exception to the established rules of finality. We disagree and therefore grant appellee's motion to dismiss the appeal for lack of jurisdiction.

Appellee, George R. Harrod, was charged by grand jury indictment with one count of simple assault, arising from the alleged striking of a female subordinate at his place of employment. By written motion, appellee moved the court to order a psychiatric examination of the complaining witness. After a hearing on the motion, the court issued a written order on August 17, 1979, directing that the complaining witness be examined by a psychiatrist. After its motion for reconsideration of the order was denied, the government filed the instant appeal. Appellee thereupon moved to dismiss the appeal for lack of jurisdiction.

In a line of cases directly applicable here, the Supreme Court has consistently held that a subpoena or discovery order directed to a non-party witness is not "final" and therefore not appealable. *United States v. Ryan*, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–1582, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alexander v. United States*, 201 U.S. 117, 120–22, 26 S.Ct. 356,

357–358, 50 L.Ed. 686 (1906). These cases establish the doctrine that a witness may obtain review of a subpoena or a discovery order only after he persists in his refusal to comply and is sentenced for contempt of court. The merits of the order will then be reviewable in an appeal from the contempt citation, a clearly severable proceeding. The government would have us ignore this well-established doctrine and find instead that the examination order involved here is appealable primarily on the basis of the intrusiveness of the order. The government offers us no principle on which to distinguish the burdensomeness of this order from that of other subpoenas and discovery orders held to be non-appealable by the Supreme Court and by United States Courts of Appeal. As we are unable to discern any such principle, we decline to arbitrarily carve out a fresh exception to the jurisdictional rule of finality.

The established doctrine of non-appealability of discovery orders issued to non-party witnesses was first enunciated by the Supreme Court in *Alexander v. United States, supra.* There appellants sought review of subpoenas duces tecum issued in a civil antitrust proceeding. The witnesses asserted a general Fifth Amendment privilege against self-incrimination and a Fourth Amendment bar to unreasonable searches and seizure, as well as the immateriality of the evidence sought. The Court held that the orders to appear and testify before an examiner were not final orders[1] and therefore not appealable. The Court further stated that the orders would only be reviewable in an appeal from a contempt proceeding. "Let the court go further, and punish the witness for contempt of its order,—then arrives a right of review; and this is adequate for his protection without unduly impeding the progress of the case." *Id.* at 121, 26 S.Ct. at 358.

*Alexander* was reaffirmed in *Cobbledick v. United States, supra,* where a unanimous Court held that an order denying a motion to quash a grand jury subpoena duces tecum is not a final order and therefore not appealable. *Alexander* was again reaffirmed by a unanimous Court in 1971 in *United States v. Ryan, supra,* where another grand jury subpoena was held not to be a final order. The *Ryan* Court stated:

> [W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal. *Cobbledick v. United States, supra; Alexander v. United States, [supra].* [*Id.* 402 U.S. at 532–33, 91 S.Ct. at 1582 (citations omitted).]

*See Maness v. Meyers,* 419 U.S. 449, 460, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975) (quoting the above passage with approval); *United States v. Nixon,* 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974) (same).

The government relies primarily on the Supreme Court's opinion in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), to justify carving out an exception to the finality doctrine as it has been authoritatively and consistently construed in *Alexander, Cobbledick,* and *Ryan.* If *Cohen* existed in isolation, it might be possible to apply its rationale to a discovery order issued to a non-party witness; however, the Supreme Court's prior consideration of this situation in *Alexander* and *Cobbledick* and its reaffirmance in *Ryan* long after the *Cohen* decision precludes such an application. Moreover, an examination of the *Cohen* rationale confirms the implicit inference that *Cohen* was never intended to apply to court orders

---

1. Although the federal court cases interpret the federal statute, 28 U.S.C. § 1291 (1976) (limiting jurisdiction to "final decisions of the district courts"), the language of which differs slightly from D.C.Code 1973, § 11–721(a)(1) ("final orders and judgments"), this Court has generally treated the two statutes in a similar fashion. *See Frost v. Peoples Drug Store, Inc.,* D.C.App., 327 A.2d 810, 812 (1974).

requiring production of information from non-party witnesses.[2]

██ The *Cohen* rule was premised on a combination of three circumstances that led the Court to find sufficient indicia of finality.[3] The first factor, that the order be a final determination of a claim of right "separable from, and collateral to" the rights asserted in the proceedings, is met here, as the government seeks to emphasize. As *Alexander, Cobbledick,* and *Ryan* establish, however, the collateral nature of the order is not a sufficient basis for finality, for otherwise all orders to non-party witnesses would be appealable.

The second two criteria that underlie the *Cohen* rule are the significance of the question of law and a lack of opportunity for later review. Neither of these criteria are met by the order sought to be appealed here. *Cohen* involved a "serious and unsettled" question of law, *i. e.*, whether a state bond provision would be applicable to a state derivative action when prosecuted in federal court. The Court deemed this question "too important to be denied review."

As the government acknowledges, the question of law in the case sub judice is closely tied to the specific facts of the case,

*i. e.*, whether the trial judge abused his discretion in granting the order to undergo a psychiatric exam. *See Ledbetter v. United States,* D.C.App., 350 A.2d 379 (1976); *United States v. Butler,* 156 U.S.App.D.C. 356, 481 F.2d 531 (1973); *United States v. Benn,* 155 U.S.App.D.C. 180, 476 F.2d 1127 (1972). This is not a "serious and unsettled" question of law that review by this court will lay to rest. Rather, allowing an appeal in this case will authorize appeals in all cases involving a similar discovery order, leading to the kind of disruption of the smooth functioning of the judicial system the finality rule seeks to avoid. *See Donlon Industries, Inc. v. Forte,* 402 F.2d 935, 937 (2d Cir. 1968) (questions of law for *Cohen* exception should be of general importance beyond the immediate concern of the litigants and not simply review for abuse of discretion).

The *Cohen* Court also relied heavily on the third factor, that the issue would be lost if an appeal were not immediately available. While the witness here obviously cannot appeal from the final judgment of this case, she does have an opportunity for review in a contempt proceeding; the issue will not be irreparably "lost".[4] Rather, application of the *Alexander* doctrine allowing

---

**2.** The government's reliance on *Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 68 S.Ct. 972, 92 L.Ed. 1212 (1948), is misplaced. *Republic Natural Gas* involved the question of whether a state commission's order was final where it had not disposed of all the issues before it. Moreover, the Court actually stated that the "considerations that determine finality ... have reference to very real interests—not merely those of the immediate parties but, *more particularly,* those that pertain to *the smooth functioning of our judicial system." Id.* at 69, 68 S.Ct. at 977 (emphasis added). The Court found the commission's order was not final for purposes of appeal. Likewise, our opinion in *District of Columbia v. Tschudin,* D.C.App., 390 A.2d 986 (1978), offers no support to the government. The *Tschudin* court quoted the above quoted language from *Republic Natural Gas* but found finality under the "ministerial act" exception as established by *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). *See generally* 9 Moore's Federal Practice ¶ 110.11, at 137–50 (2d ed. 1975).

**3.** *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546–47, 69 S.Ct. at 1225–1226. *See Grinnell Corp. v. Hackett,* 519 F.2d

595 (1st Cir.), *cert. denied, Chamber of Commerce of U. S. v. United Steelworkers of America, AFL–CIO–CLC,* 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975); 9 Moore's Federal Practice, *supra,* ¶ 110.10, at 133.

**4.** *See United States v. Ryan, supra* 402 U.S. at 533, 91 S.Ct. at 1582:

Only in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to this principle [of *Alexander*].

*Compare Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (denial of pretrial double jeopardy claim is appealable); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (order denying bail reduction appealable); *Wise v. Murphy,* D.C.App., 275 A.2d 205, 211 (1971) (en banc) (pre-arrest lineup order before *any* criminal charges are instituted, is appealable as analogous to *Stack v. Boyle*). *See generally* 9 Moore's Federal Practice, *supra,* ¶ 110.10, at 134.

review of a subpoena or discovery order only through an appeal from a contempt proceeding would provide this court with a fuller record for review, when taken. *See Kaufman v. Edelstein*, 539 F.2d 811, 814 n.3 (2d Cir. 1976). As Judge Friendly stated in *United States v. Fried*, 386 F.2d 691, 695 (2d Cir. 1967), "this is no time to weaken the historic rule putting a witness' sincerity to the test of having to risk a contempt citation as a condition to appeal, however harsh its application may seem to the appellant here."

The only justification put forward by the government here for finding finality is that the witness should not be required to assume the added burden of risk inherent in a contempt proceeding before she is allowed an opportunity to vindicate her rights.[5] The government would have us summarily dismiss the argument that review can only be had after contempt proceedings. The Supreme Court in *Alexander, Cobbledick,* and *Ryan*, however, found this same argument not only persuasive but controlling. In *Alexander*, the Court specifically acknowledged that the witness asserted colorable Fifth and Fourth Amendment claims.

Of the United States Courts of Appeal that have considered the question, only the Tenth Circuit has held a subpoena or discovery order directed to a non-party witness to be appealable. In *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), the court held that the potential pecuniary loss from discovery of trade secrets from a non-party witness justified a *Cohen*-based exception from the *Alexander* doctrine. The *Covey Oil* court cited no authority for this construction nor did it attempt to establish a principle that

would justify finding appealability short of a contempt citation to protect a witness' pecuniary interests but not the constitutional rights asserted in *Alexander*. By contrast, five other Circuits have explicitly rejected *Covey Oil* as inconsistent with the controlling *Alexander* doctrine; several of these cases involved constitutionally-based claims of privilege. *See, e. g., Ryan v. Commissioner*, 517 F.2d 13, 18–20 (7th Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975) (Fifth Amendment claim against self-incrimination); *Gialde v. Time, Inc.*, 480 F.2d 1295 (8th Cir. 1973) (claim of confidentiality of news sources); *United States v. Anderson*, 150 U.S.App.D.C. 336, 464 F.2d 1390 (1972) (Fifth Amendment claim against self-incrimination); *Borden Co. v. Sylk*, 410 F.2d 843 (3d Cir. 1969) (claims of pecuniary harm and irrelevance); *United States v. Fried, supra* (claim of potential harm to psychological and physical well-being if required to testify about father's finances). *See also In re Oberkoetter*, 612 F.2d 15 (1st Cir. 1980) (attorney-client privilege claim); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174 (2d Cir. 1979) (Friendly, J.) (claim of governmental privilege) (discussing cases); *North Carolina Association of Black Lawyers v. North Carolina Board of Law Examiners*, 538 F.2d 547 (4th Cir. 1976) (burdensomeness of discovery order; *Covey Oil* distinguished); *Grinnell Corp. v. Hackett*, 519 F.2d 595 (1st Cir.), *cert. denied, Chamber of Commerce of U. S. v. United Steelworkers of America, AFL–CIO–CLC*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975) (First Amendment claim against disclosure of membership list by party; *Alexander* doctrine applied); *Dow Chemical Co. v. Taylor*, 519 F.2d 352 (6th

---

5. Neither *Maness v. Meyers, supra*, nor *In re Cys*, D.C.App., 362 A.2d 726 (1976), support the government's position. No question of appealability was before the Court in *Maness*. In fact, in its review of a citation for contempt against a lawyer who had advised his client to refuse to comply with a production order on Fifth Amendment grounds, the Court quoted *United States v. Ryan, supra*, and recognized the appropriateness of the lawyer's advice as a means of preserving his client's rights. "This

method of achieving precompliance review is particularly appropriate where the Fifth Amendment privilege against self-incrimination is involved." 419 U.S. at 461, 95 S.Ct. at 592 (footnote omitted). *Cys* also undercuts the government's position. There the court adopted a strict interpretation of the finality doctrine, holding that a "technical" criminal contempt citation, for which no sanction was imposed, is not a final order and therefore not appealable.

Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975) (same).[6]

In only one case has the Supreme Court been persuaded that a witness need not be required to risk contempt proceedings in order to obtain review of a subpoena or other discovery order. In that case, *United States v. Nixon, supra,* the Court recognized the continuing validity of the *Alexander* doctrine but declined to apply the doctrine to the very singular facts then before it. The Court held that requiring the President to be first found in contempt would be "peculiarly inappropriate due to the unique setting in which the question arises." 418 U.S. at 691, 94 S.Ct. at 3099. The possibility of a constitutional confrontation between two branches of government and of protracted litigation over the constitutional authority for citing a sitting President for contempt led the Court to find sufficient finality in that unique situation. No contention can be made that this case falls within the *Nixon* exception to the *Alexander* doctrine.

In addition to the overwhelming authority of the federal cases discussed above, which hold that subpoenas and discovery orders are not final for purposes of appeal, this case is not distinguishable from our decision in *In re Cys*, D.C.App., 362 A.2d 726 (1976). In *Cys*, a lawyer had been cited for "technical" criminal contempt for his non-compliance with a court order to turn over certain documents. Because no sanction was imposed, however, we held that the "technical" contempt citation was not a final order and therefore not appealable. If a "technical" contempt citation is insufficiently final before a sanction is imposed, then a fortiori a court order requiring the production of information by a witness before any contempt proceeding is begun is not final and not appealable. The government would distinguish *Cys* on the basis that an order may be appealed *before* contempt proceedings are begun, but once such proceedings are instituted, a sanction must be imposed before the order becomes appealable again. The illogic of this position is apparent.

The policy behind finality, *i. e.,* of eliminating piecemeal litigation and the delays caused by interlocutory appeals, *see Cobbledick v. United States, supra,* 309 U.S. at 324–25, 60 S.Ct. at 540–541, applies with particular force in the criminal justice system. As the Court stated in *DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657–658, 7 L.Ed.2d 614 (1962), in rejecting the "finality" of orders disposing of motions to suppress, "the delays and disrup-

---

**6.** The government seeks to distinguish this line of cases as inapposite to an order to undergo a psychiatric examination. The only authorities cited by the government, however,—other than the general language of *Cohen*—are *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), and *Caswell v. Manhattan Fire & Marine Insurance Co.*, 399 F.2d 417 (5th Cir. 1968). In *Perlman*, the Court held that an order directing the district court clerk to turn over Perlman's exhibits from a civil case to the grand jury was appealable by Perlman. The very narrow principle underlying the case was that the petitioner "was powerless to avert the mischief of the order," 247 U.S. at 12, 38 S.Ct. at 419, before an appeal could otherwise be taken. In *United States v. Ryan, supra,* the *Perlman* case was explicitly held inapplicable to an order directed to a non-party witness, as opposed to an order directed to a third party who did not share the asserted interests of the witness. The *Ryan* court noted that in *Perlman*

the custodian could hardly have been expected to risk a citation for contempt in order to secure Perlman an opportunity for judicial review. In the present case, however, respondent is free to refuse compliance and, as we have noted, in such event he may obtain full review of his claims before undertaking any burden of compliance with the subpoena. *Perlman*, therefore, has no application in the situation before us. [*United States v. Ryan, supra,* 402 U.S. at 533–34, 91 S.Ct. at 1582–1583.]

*See Cobbledick v. United States, supra* 309 U.S. at 328–29, 60 S.Ct. at 542–543 (distinguishing *Perlman); see generally* 9 Moore's Federal Practice, *supra,* § 110.13[11], at 193.

*Caswell* is likewise of no help to the government. *Caswell* dealt with an appeal from a summary judgment entered for the defendant. The court held that the plaintiff could obtain review, after final (summary) judgment, of an order quashing a subpoena duces tecum directed to a non-party witness. The court's general comments on a non-party's right to appeal an order denying a motion to quash are pure dicta, and as far as they rely on *Covey Oil*, are a distinctly minority position.

tions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law. The Sixth Amendment guarantees a speedy trial." *See generally* Comment, *Interlocutory Appeals in Criminal Cases: An Open But Closely Guarded Door*, 66 Geo.L.J. 1163, 1163–65 & n.11 (1978).

To accept the government's position in this case, we would have to conclude that henceforth, unless this court is to commence a process of non-principled, ad hoc adjudications, not only would the specific court order involved here—that a witness undergo a psychiatric exam—be appealable, but so would all of the others involved in the line of federal cases from *Alexander* to *Ryan* and from *Fried* to *Gialde.* This list of orders—subpoenas duces tecum in civil suits, subpoenas and subpoenas duces tecum to appear before a grand jury, orders to answer questions on depositions, and orders to file answers to interrogatories—cover most of the spectrum of court orders that will be issued to non-party witnesses requiring their testimony or the production of documents or other information. The consequences of this to an already overburdened appellate court, *see* Subcommittee on the Workload of the District of Columbia Court of Appeals, District of Columbia Judicial Planning Committee, *District of Columbia Court of Appeals: Workload Problems and Possible Solutions* (August 1979) (the "Douglas Committee" Report) would be obvious to even the most casual observer.

In light of both the consistent decisions of the Supreme Court and of this court denying the appealability of subpoenas and discovery orders to non-party witnesses, and this court's duty to effectuate "the effective and fair administration of the criminal

law," we have no other alternative but to grant appellee's motion to dismiss the appeal for lack of jurisdiction.

*Appeal dismissed.*

FERREN, Associate Judge, with whom Associate Judges KELLY and MACK join, concurring:

I agree with Chief Judge NEWMAN'S opinion for the court. In view of Judge GALLAGHER'S dissent, however, I write separately to underscore my concern that we not appear, as a court, to be heading toward a relaxed use of mandamus as a way around the limitations on interlocutory appeals.[1]

## I.

The government has filed a "notice of appeal" pursuant to D.C.Code 1973, § 11–721(a)(1), contending that the trial court's order directing a pretrial psychiatric examination of the complaining witness is a "final order[ ]," *id.*, by virtue of the "collateral order doctrine" explicated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The government has not, in the alternative, sought mandamus, apparently preferring to seek a decision on its right to appeal this category of pretrial orders. *Compare Bowman v. United States*, D.C.App., 412 A.2d 10, 11 (1980) (per curiam).[2] The defense, accordingly, has had no opportunity to brief or argue against that alternative approach. Under the circumstances, therefore, the suggestion that this court, in effect, impose the extraordinary mandamus remedy sua sponte would have the practical impact of announcing a rule that trial court orders of pretrial psychiatric examinations of com-

1. Specifically, Judge GALLAGHER, joined by Judge KERN, sua sponte "would treat the appeal as a petition for writ of mandamus (or prohibition) which in accordance with a custom sometimes followed, I would deny. [Citations omitted.] But in so doing—also in following custom—I would suggest to the trial court that it vacate its order ...." *Post* at 39. Clearly, this is but a delicate way of issuing the writ, for the trial court would not lightly ignore this court's "suggestion."

2. In *Bowman*, the defendant brought an interlocutory appeal and, in the alternative, sought mandamus challenging a pretrial ruling that unless the defendant revealed "the nature of his anticipated defense, an affirmative defense could be presented only through [defendant's] own testimony." *Bowman, supra* at 11. This court accepted the alternative argument and held that trial judge had "exceeded his authority." *Id.*

plaining witnesses in criminal cases—basically discretionary determinations—will receive no different scrutiny on petition for writ of mandamus from that given to the ordinary appeal premised on alleged abuse of discretion. That is not the law.

The writ of mandamus "is not to be used as a substitute for appeal." *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964); *accord, Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). Rather, it is a drastic and extraordinary remedy used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *accord, Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *Bowman, supra* at 12. A court should grant the writ only "when there is 'usurpation of judicial power' or a clear abuse of discretion." *Schlagenhauf, supra*, 379 U.S. at 110, 85 S.Ct. at 238 (quoting *Bankers Life, supra*, 346 U.S. at 383, 74 S.Ct. at 148); *accord, Will, supra*, 389 U.S. at 95, 88 S.Ct. at 273. Mandamus is not appropriate when " 'the most that could be claimed is that the [lower] courts have erred in ruling on matters within their jurisdiction.' " *Schlagenhauf, supra*, 379 U.S. at 112, 85 S.Ct. at 239 (quoting *Parr v. United States*, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956)); *accord, Will, supra*, 389 U.S. at 98 n.6, 88 S.Ct. at 275 n.6; *United States v. Moultrie*, D.C. App., 340 A.2d 828, 830 (1975). *See generally In re Attorney General of the United States*, 596 F.2d 58, 62–64 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62

L.Ed.2d 141 (1979); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure §§ 3934–36 (1977 & Supp. 1979).[3]

Characteristically, therefore, mandamus is reserved for abuse of judicial power, in contrast with abuse of acknowledged discretion. Although that line is not conceptually easy to draw, there is a difference in degree of judicial abuse, approaching a difference in kind, that warrants different appellate analysis of "mandamus" and "appeal" questions.

## II.

Although this case, absent relevant briefing, is not in a posture for consideration as a petition for writ of mandamus, it is important for the sake of the record here to clarify the factual basis for the trial court's ruling. In this case, the government is prosecuting a District of Columbia official for simple assault against an employee under his supervision. *See* D.C.Code 1973, § 22–504. Defense counsel made three proffers in support of the motion for a psychiatric examination of the complaining witness:

(1) Defense counsel read a doctor's notation from a clinical record of Howard University Hospital where, according to counsel, the complaining witness was admitted "two or three days after this alleged incident." The notation said: "The patient stated that she has a complex against all men because she feels they will beat her up."[4]

(2) The complainant "has placed at least four such [assault] complaints against men in this city during the past two years, two

---

3. The policy against use of mandamus as a substitute for appeal is especially sound in a criminal case "where the defendant is entitled to a speedy resolution of the charges against him." *Will, supra*, 389 U.S. at 96, 88 S.Ct. at 274. The Supreme Court stressed in *Will*, moreover, that "the case against permitting the writ to be used as a substitute for interlocutory appeal [is not] 'made less compelling . . . by the fact that the Government has no later right to appeal.' " *Id.* at 97, 88 S.Ct. at 274–275 (quoting *DiBella v. United States*, 369 U.S. 121, 130, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962)).

"Congress clearly contemplated when it placed drastic limits upon the Government's right of review in criminal cases that it would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions." *Id.* at 97 n.5, 88 S.Ct. at 274–275 n.5. *See generally* 16 C. Wright, *supra* § 3936.

4. Defense counsel had subpoenaed the hospital records, which had not been delivered to court. Counsel apparently read from her own copy of the record.

of which emanated and were concerned with people connected or having to do with her job. After these alleged reports to authorities of one form or another, she later withdrew or said she did not tell the truth about them."

(3) "[I]n 1977, [the complaining witness] attempted to take her life and was admitted to, as a mental patient, Washington Hospital Center where she was treated for a period of at least three weeks; and we are advised, told to continue through clinical assistance, which she did not do." [5]

As to the first representation, defense counsel apparently furnished her copy of the Howard University Hospital record to the court, which then pursued whether the doctor's notation would be subject to cross-examination and how it would bear on the complaining witness' credibility. The government did not challenge this record. As to the other two representations, the prosecutor denied the four alleged assaults but admitted the attempted suicide. The prosecutor added, however, that the fact the witness had once tried to kill herself would not be enough to justify a psychiatric examination. Defense counsel then prof-

fered more details about the other assaults, although she produced no affidavits.

The trial court ordered the requested psychiatric examination primarily because of the first defense proffer, i. e., the "admission [about 'a complex against all men'] attributed to the complaining witness." (The trial court's ruling is set forth in its entirety as an appendix to this opinion.)

The government filed a Motion for Reconsideration. During the hearing on the motion, the government in effect conceded that the complaining witness had made the statement about "all men" which defense counsel had read into the record and the court had relied on in its original ruling. Although the government reported the statement as "I hate all men" instead of I have "a complex against all men," the thrust of the argument was to put the statement into context. The government asked the court "to look into human nature, as to whether or not it was reasonable for a human being, and particularly a frail woman, under the circumstances she was laboring then, to utter that statement ... a statement uttered by a normal human being." [6] Defense counsel again detailed the

---

**5.** Defense counsel continued:

We will say to the Court that we have subpoenaed those records and we have a letter—a note, which we will get to the Court shortly, which will indicate that all of [complainant's] records with respect to that hospitalization have disappeared from the record room of Washington Hospital Center.

**6.** The government initiated its argument for reconsideration with the following statement:

At the last hearing on defendant's motion for psychiatric examination, certain allegations were made which were not refuted by the Government as clearly as they could have been. And this was one of the reasons that I wanted to put before the Court in our motion for reconsideration, the facts that we felt should have been brought out at the original motion.

The Court indicated in its ruling that the reason why the Court ruled as it did—and that is to order a psychiatric examination—was on the basis of the statement made by [the complainant] at the time she was put into the hospital, Howard University Hospital.

We wanted to clearly delineate the circumstances surrounding that, to show the Court

that this was a statement not irrational, not bizarre, but a statement that under the circumstances it would not have been irrational and bizarre if she had not made it.

Those circumstances were such that here was a woman who had been savagely beaten by her supervisor, savagely, under circumstances she had no reason to believe. She had called her husband, admittedly for the purpose of exacting vengeance, to protect her, which, as a woman, she had a right to expect that protection.

And when her husband came, due to the circumstance of his own fear of the power of this man—and you will recall that this man was a Metropolitan Police Officer, and they are directly under the jurisdiction of the defendant.

And as he pointed out, when he went there, it wasn't that he disbelieved his wife. It was the fact that he understood that as a police officer, as a person with a gun, as a man who was now facing the director of personnel for the city of Washington, that he had better act very carefully.

And so as he would say when the trial commences, that although he did not disbelieve his wife, he felt he had to pretend. But

four other proffered incidents and claimed continued inability to obtain the Washington Hospital Center records. *See* note 5 *supra.* The government again denied the four alleged incidents and expressed its willingness to have an evidentiary hearing. The trial court denied the motion.

I express no opinion whether the foregoing proceedings would warrant extraordinary relief by way of mandamus for "usurpation of power." *Moultrie, supra* at 832. I offer this expanded summary of the record, as well as the trial court's ruling, to put the factual statements from Judge GALLAGHER's dissenting opinion in perspective.[7]

## APPENDIX

THE COURT: I have endeavored to read the cases cited and relied upon by counsel in this matter and, for the most part, as conceded by [defense counsel] when she was arguing on the motion, the cases in the appella[te] courts have sustained, for the most part, the ruling of a trial judge denying request for psychiatric examination. But, in doing so, the appella[te] court has primarily recognized

that the decision at the trial level was one of the exercise of discretion and that absent a showing of the abuse of that discretion, the appella[te] court was not warranted in concluding that error had been committed.

It is this Court's understanding that the guidelines for ordering such an examination and the purpose of such an examination can be for the purpose of determining the competency of a witness and/or as an aid to the jury in that body's resolution of the principle issue, in so many criminal cases, that of credibility.

There apparently is no claim here or contention here that the purpose of a psychiatric examination is needed to determine the competency of the witness. So, the question is narrowed to the issue of its need as contended for by the defense as an aid to the jury in resolving the issue of credibility.

The Court is persuaded that the interest of justice in this case, in the face of the entry in Howard University Hospital record, which reads as an admission attributed to the complaining witness, is

---

his wife did not know this. To her, she had been betrayed. When they left, they went home, and she began having pains in her abdomen and went to the hospital.

Here she is, being admitted to the hospital, about to lose, she thinks, an unborn child; her husband has betrayed her; her supervisor has beaten her; her whole world has changed; all of the things she had faith in have gone. And she says, in a moment of hate, "I hate all men."

Your Honor, if that is not a situation in which a normal human being would utter that, then the whole world is topsy-turvy. Your Honor, it would be an injustice to invade her privacy, to order her to undergo a psychiatric examination. That was really what we wanted to put before the Court, because that is what the Court made its ruling upon.

We have a legal argument here, which, because of the time, we will not go into it. It's explicated in detail in our motion. But we do wish to put forth what is really an equitable argument and an argument asking the Court to look into human nature, as to whether or not it was reasonable for a human being, and particularly a frail woman, under the circumstances she was laboring then, to utter that statement.

And it was not one to indicate she was in any bizarre or irrational state of mind, but a statement uttered by a normal human being.

7. According to Judge GALLAGHER:

The record in this case, involving a sexual assault charge, establishes that, upon the defendant's motion, the trial court ordered that the complaining witness must undergo a psychiatric examination *by a doctor suggested by the defendant.* There was no affidavit to support this motion, nor was a hearing held to take testimony on this sensitive situation to determine whether the defendant could successfully carry the factual burden of establishing that the motion should be granted. There were merely unsupported allegations of defense counsel, which incidentally were, for the most part, directly controverted by assertions of government counsel. [*Post* at 39 (emphasis in original) (footnote and citations omitted).]

In light of Judge GALLAGHER's emphasis on the fact that the court appointed a psychiatrist suggested by the defendant, I note that the government never disputed the qualifications of the psychiatrist or suggested appointment of a different psychiatrist.

that which tilts the scale here, and that in the exercise of discretion, and not just to assure the Court of a just result from the standpoint of the defense, but because there is an underlying suggestion of the possibility, based on that same entry, that an individual might be using the system of justice for a personal purpose.

With that being the picture, the Court will grant the motion and order that the complaining witness undergo a psychiatric evaluation.

GALLAGHER, Associate Judge, with whom Associate Judge KERN joins, dissenting:

The record in this case, involving a sexual assault charge, establishes that, upon the defendant's motion, the trial court ordered that the complaining witness must undergo a psychiatric examination *by a doctor suggested by the defendant.* There was no affidavit to support this motion, nor was a hearing held to take testimony on this sensitive situation to determine whether the defendant could successfully carry the factual burden of establishing that the motion should be granted. There were merely unsupported allegations of defense counsel, which incidentally were, for the most part, directly controverted by assertions of government counsel.[1]  *See United States v. Butler*, 325 F.Supp. 886 (D.D.C.1971), *aff'd*, 156 U.S.App.D.C. 356, 481 F.2d 531 (1973) (trial judge should not exercise discretion to order psychiatric examination in absence of substantial factual predicate; bare allegation that government witnesses were drug

addicts not sufficient); *United States v. Klein*, 271 F.Supp. 506 (D.D.C.1967), *aff'd sub nom. Hamilton v. United States*, 139 U.S.App.D.C. 368, 433 F.2d 526, *cert. denied*, 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1970) (defendant not entitled to pretrial psychiatric examination of witness on mere allegation of mental disorder characterized by tendency to prevaricate); *Ballard v. Superior Court of San Diego County*, 64 Cal.2d 159, 49 Cal.Rptr. 302, 313, 410 P.2d 838, 849 (1966) (judge should exercise discretion in sex case *only* if defendant presents a compelling reason).

I would not get bogged down on a doctrinaire question of whether we have before us an appealable order. Instead, I would come to grips with the real life problem in the case because of the important implications and the urgent need to lay down guidelines. In so doing, I would treat the appeal as a petition for writ of mandamus (or prohibition) which in accordance with a custom sometimes followed, I would deny. *See, e. g., Bowman v. United States*, D.C. App., 412 A.2d 10 (1980) (mandamus would lie to prevent trial judge from compelling defendant's disclosure of the nature of his defense; however, court refrained from issuing the writ on the assumption that trial court would vacate his order without such pressure); *United States v. Moultrie*, D.C. App., 340 A.2d 828 (1975) (appellate court refrained from issuing mandamus because trial court would be sure to follow the reasoning of the appellate court and quash the subpoena in issue); *Freeman v. Smith*, D.C. App., 301 A.2d 217 (1973) (in light of appel-

---

1. During argument at the trial court level, defense counsel alleged that the complaining witness was reported to have said on a previous occasion that she has a complex against all men. This, Judge Ferren's opinion says, the government acknowledged at the argument. In the interest of a fair portrayal of the record, I recite what the government actually said:

> Here she is, being admitted to the hospital, about to lose, she thinks, an unborn child; her husband has betrayed her; her supervisor has beaten her; her whole world has changed; all of the things she had faith in have gone. And she says, in a moment of hate, "I hate all men."
>
> Your Honor, if that is not a situation in which a normal human being would utter

that, then the whole world is topsy-turvy. Your Honor, it would be an injustice to invade her privacy, to order her to undergo a psychiatric examination. That was really what we wanted to put before the Court, because that is what the Court made its ruling upon.

This serves to demonstrate dramatically what my opinion stands for: the need for an evidentiary hearing on this type of contested motion in order to determine whether the movant can carry the heavy burden required by law. The basis for the requirement of an evidentiary hearing in a case such as this is graphically demonstrated by Judge Ferren's concerned separate opinion in this case.

late court's ruling on point of law and transmittal of certified copy of opinion to trial judge, it was unnecessary to issue writ of mandamus). But in so doing—also in following custom—I would suggest to the trial court that it vacate its order requiring the complaining witness to undergo the psychiatric examination and hold the evidentiary hearing to determine *first* whether the defendant can successfully carry the heavy factual burden required to support his extraordinary motion.

The beauty of this procedure is that the extraordinary writ of mandamus is not issued by this court, yet a message is conveyed to the trial court for its serious consideration. If the trial court decides not to pursue the suggested procedure and if the case is brought back to this court on a petition for writ of mandamus, we would then have a ripe question of whether to issue the writ.[2]

The majority opinion points out that the complaining witness has open to her a contempt of court citation upon refusal to submit to the examination—and that this would offer an avenue of appeal to test the order. On these facts, I would not require the complaining witness in this sex case to go through the ordeal of a contempt citation for this purpose.[3] I think it would be insensitive, if not unseemly, to compel such a procedure in this case. Furthermore, it is a major setback to the step forward we took on female complaints in rape cases in *Arnold v. United States*, D.C.App., 358 A.2d 335 (1976) (en banc) (corroboration not required of mature female victims of sex crimes).

My suggested procedure would expeditiously help to resolve the psychiatric referral question after an evidentiary hearing and would avoid pushing this complaining witness on a sexual assault charge from pillar to post. It also might avoid a dangerous precedent which potentially could discourage complaints by females in this type of case.[4]

NEBEKER, Associate Judge, with whom HARRIS, Associate Judge, joins, dissenting:

The majority has overlooked the unique and extreme nature of the court order involved. There is no specific statute or discovery rule which authorizes a trial judge to order the complainant in a criminal case to undergo a psychiatric examination. The complainant's right to privacy, which is so clearly implicated by this intrusive order, can only be adequately protected through the availability of an immediate appeal. For these reasons, and because orders of this type may well have serious consequences for the criminal justice system as a whole, the order should be held appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

The Supreme Court has considered the appealability of pretrial orders in criminal cases on a number of occasions. *See United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). In two of these cases, *Abney* and *Stack*, the court held orders denying pretrial motions appealable. "In each instance, the Court relied on the final judgment rule's 'collateral order' exception articulated in *Cohen v. Beneficial Industrial Loan Corp.....*" *United States v. MacDonald*, *supra* at 854, 98 S.Ct. at 1549.

---

2. *E. g., United States v. Moultrie*, D.C.App., *supra* and District of Columbia Court of Appeals' order entered July 14, 1975.

3. If there were involved a private or government attorney, as in *In re Cys*, D.C.App., 362 A.2d 726 (1976), we would have a different factual situation. Counsel sometimes create test cases in this manner.

4. It is unfortunate that this simple, earthy issue has taken on such a complexity, and has required so much laboring, even to the point of a separate opinion dissecting my unwitting dissent.

The majority here concedes that *Cohen* would be applicable in this situation were it not for the Supreme Court's decisions in *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); and *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). *Ante* at 31–32. The infirmity in this position springs from the fact that two of these cases, *Cobbledick* and *Alexander*, predate the Supreme Court's establishment of the collateral order exception in *Cohen*. The majority utterly fails to explain how cases, decided 9 and 43 years, respectively, prior to the establishment of a doctrine, can authoritatively determine the doctrine's applicability. Another problem with the majority's reliance on these three cases is that they are, in their essential factual aspects, very different from the instant case. *Alexander* is an antitrust case in which a subpoena duces tecum's requirement of production of books and documents was held not appealable. *Cobbledick* and *Ryan*, although criminal cases, involved subpoenas similar to that in *Alexander*. The orders that were held nonappealable in these cases related to traditional, specifically authorized, kinds of discovery. None of them involved the extraordinary privacy invasion of this case. Moreover, none required justification under an inherent court power theory. Thus, I submit, these authorities are of little or no relevance to the applicability of the collateral order exception in this case.

The majority concedes that the first part of the *Cohen* test is satisfied on these facts. *Ante* at 31–32. There is no question that the order at issue is separable from, and collateral to, the issues in the criminal case. However, the majority incorrectly concludes that the second two criteria underlying *Cohen* are not met. These criteria question whether the order is in an area of law that is serious and remains unsettled, and whether rights will be irreparably lost because of the lack of availability of immediate review.

In this case, a serious question involving the rights of the victims of crime remains unsettled. The majority offers no statute or discovery rule in support of this order. There is none. Indeed, Superior Court Criminal Rule 16, which provides for discovery and inspection in criminal cases, makes no mention of psychiatric examinations of witnesses.* Even conceding, under an inherent power theory, that the court may order psychiatric examinations of witnesses in certain criminal cases, the actual exercise of the power cannot be equated with the issuance of a statutorily authorized subpoena or discovery order. In *United States v. Benn*, 155 U.S.App.D.C. 180, 476 F.2d 1127 (1972), a case involving the failure of a trial court to order the psychiatric examination of a mentally retarded rape prosecutrix, the court commented on the considerations against ordering a psychiatric examination.

> For example, a psychiatric examination may seriously impinge on a witness' right to privacy; the trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination; the examination itself could serve as a tool of harassment and the impact of all these considerations may well deter the victim of such a crime from lodging any complaint at all. . . . [*Id.* at 184, 476 F.2d at 1131.]

These considerations warrant attention in any criminal case. Unfortunately, the majority here chooses to ignore them, and compounds its error by failing to offer guidelines of its own on this important issue.

The majority posits that the third element of the *Cohen* exception, involving irreparable loss of rights, is not met here because the complainant may refuse the order and appeal from a subsequent adjudication of contempt. I submit the court is most insensitive when it requires someone

---

* In comparison, Super.Ct.Civ.R. 35 provides for the physical or mental examination of a party, or of a person in the custody or under the legal control of a party, upon motion showing good cause.

who may have already suffered indignity and abuse at the hands of an assailant, to either undergo mental examination or be faced with the possibility of contempt sanctions. *See Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965).

The majority correctly states that the finality rule's underlying policy of eliminating piecemeal review and delays "applies with particular force in the criminal justice system." *Ante* at 34. However, there is no piecemeal review problem in this case. The complainant, who is subject to the court order, is not a party. She is a hapless witness. Once issued, the court order becomes final as to her. There will be no opportunity short of the unseemly contempt proceedings for later review of the order.

The Supreme Court has indicated that in two classes of cases appeal will generally be denied under *Cohen. See Firestone Tire & Rubber v. Risjord,* 449 U.S. ———————, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). One class is comprised of discovery orders in which appeal may be obtained by defiance and sufferance of contempt. The second class is comprised of orders which merge with the judgment and are reviewable on appeal of the entire case. However, where the harm suffered from the interlocutory order differs in a significant way from the harm suffered from other interlocutory orders which are merely erroneous, appeal will be granted. Therefore, in criminal cases appeal is granted when a constitutional right of the harmed party is likely to be destroyed before trial. *See Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (speech and debate clause); *Abney v. United States, supra* (double jeopardy grounds); *Stack v. Boyle, supra* (bail). The witness' privacy rights will not only be destroyed by undergoing the examination, but also will be destroyed by our subjecting her to possible public inquiry into her mental state at the trial. Courts have found privacy rights in much less. *See United States v. Hubbard,* —— U.S.App.D.C. ——, 650 F.2d 293 (1980) (Church of Scientology has privacy right in documents seized for criminal trial). Only the bold and the brave, in practice, will face up to the contempt power of the court, while the timid and law-abiding—unlikely to hazard a breach of the law—will go unprotected. We are not dealing with a corporation willing to exert every effort against civil discovery motions, but with a victim who is more likely, I submit, to be among the class of the timid and law-abiding.

I remain convinced that the final intrusive nature of this order, combined with the unquestioned need to foster the reporting of crimes and to protect victims from harassment, compels a holding of immediate appealability. I fear that the majority's sterile and formalistic treatment of this "procedural issue" is without proper concern for the impact of its holding. I dissent.