William HORTON, Appellant,

v.

UNITED STATES, Appellee.

William HORTON, Appellant,

v.

Hon. Evelyn E. C. QUEEN, Appellee.

Nos. 91–388, 91–397 and 91–434.

District of Columbia Court of Appeals.

May 29, 1991.

James Klein, Page Kennedy, Sandra K. Levick, Stephen I. Singer and David A. Reiser, Public Defender Service, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, Bruce Yannett, and Nancy R. Page, Asst. U.S. Attys., for appellee.

Before STEADMAN and WAGNER, Associate Judges, and KERN, Senior Judge.

STEADMAN, Associate Judge:

William Horton is a defendant under indictment for second-degree murder who is free on personal recognizance. He intends to enter a defense of not guilty by reason of insanity. Before us are two interlocutory appeals and a petition for a

writ of mandamus. They arise as a result of a trial court grant of a government motion to require Horton to submit himself to St. Elizabeths Hospital for an in-patient productivity examination, not to exceed sixty days.[1]

We dismiss appeal No. 91–397 for lack of jurisdiction and No. 91–388 as moot, and deny the writ of mandamus. In addition, because the course of events in these appeals may reflect some uncertainty concerning stays pending appeal as well as trial court power to act with respect to matters under appeal, we take the occasion to address briefly these two matters of appellate-trial court interaction.

I

William Horton, a sixty-eight-year-old man with no previous criminal record, was arrested on April 13, 1990, for the alleged murder earlier that day of his former supervisor at Woodward & Lothrop. The following day he was released on personal recognizance, a status he continues to hold to this day.

An extensive examination of Horton has been conducted on the defense's behalf by Drs. Neil Blumberg and Jonathan H. Pincus, and the government has been allowed to review their reports. At a status hearing on Wednesday, April 10, 1991, without prior notice to the defense, the government orally moved to commit Horton for an inpatient study at St. Elizabeths Hospital. After a brief oral argument, the trial court orally ruled that Horton should be committed for a productivity examination, stating: "I will allow him to turn himself in at Saint Elizabeths rather than go through the cellblock. He must be there by close of business tomorrow with his medical records under his arm."

On the morning of Thursday, April 11, Horton filed a written motion to stay the order with the trial court. Such a request is ordinarily required under our rules before a stay may be sought from this court. D.C.App.R. 8(a). The trial court indicated that it would not hear the motion before 9:30 a.m., Friday, April 12. Thereupon, Horton filed an Emergency Application for Immediate Stay with our court.[2] The government informally indicated that it did not oppose a stay of the trial court order for a period of up to three weeks. To maintain the status quo until the trial court could act upon the request for a stay and in the absence of any temporary stay by the trial court, we issued a temporary stay until 2 p.m., Friday, April 12.

On Friday, the trial court notified counsel that an evidentiary hearing on the motion to commit Horton would be held at 4:30 p.m. that afternoon. Since again no stay had been issued by the trial court and our stay expired at 2 p.m., Horton filed another Emergency Application for Extension of Stay with this court. To allow, we thought, ample time for consideration of the matter, we continued the stay until noon on Tuesday, April 16, "to allow the trial court to complete its consideration of the matter."

The hearing commenced late Friday afternoon. At the outset the trial court indicated that it was vacating the order of April 10 and would proceed to consider afresh the issue of commitment. Over the defense's protest that it had had insufficient time to prepare for the hearing, evidence was received consisting principally of the testimony of Dr. Raymond F. Patterson, a psychiatrist who is the medical director of the Forensic Services Administration responsible for both in-patient and out-patient examination in criminal cases. Dr. Patterson testified that, in his opinion, inpatient examination of Horton was neces-

---

1. A productivity examination is an attempt to determine an individual's mental condition at the time of the charged offense. Thus, the proceedings before us have nothing to do with Horton's present mental condition. To the extent that that condition may constitute him a danger to himself or others, or he is otherwise such a danger, appropriate procedural mecha-

nisms are available. See D.C.Code § 21–521 (1989) (Emergency Hospitalization); § 23–1321 (1989) (Release In Other Than First Degree Murder Cases Prior To Trial).

2. Horton also filed an appeal of the April 10 order, which was designated No. 91–388.

sary in order to do a proper evaluation on behalf of the government.

At the conclusion of the hearing, shortly before 7 p.m., the trial court ordered Horton to report to St. Elizabeths Hospital "before this day is complete, that is by midnight April the 12th, 1991" for a productivity evaluation; the commitment to be "as long as the doctors determine it necessary for a complete evaluation in their medical opinion," but no longer than June 10, 1991 (the date of the next hearing in the case).[3] Defense counsel's request for a stay of the order until noon on Tuesday, April 16, or even "just till Monday" was opposed by the government and denied by the trial court. Horton thereupon filed yet another Emergency Motion for a Stay with this court,[4] which was granted by a three-judge panel of this court about 9 p.m. that evening "without prejudice to the submission by appellee of any opposition thereto." We further ordered that both parties submit briefs on the issue of whether the appeal should be dismissed for lack of jurisdiction as having been taken from a non-final order, citing our decision in *United States v. Harrod*, 428 A.2d 30 (D.C.1981) (en banc). We turn to that issue.

## II

▮▮▮ We conclude that in the precise present posture of this case as we understand it, the en banc decision in *Harrod* is controlling and requires our dismissal of the appeal for lack of jurisdiction. That case involved the appeal from a trial court order requiring a complaining witness in a criminal case to undergo a psychiatric examination. The issue was whether that order was a "final order" within D.C.Code § 11–721(a)(1) or reviewable as a collateral order. We held that it was neither, citing a line of Supreme Court cases establishing the doctrine that "a witness may obtain review of a subpoena or a discovery order only after he persists in his refusal to

comply and is sentenced for contempt of court." 428 A.2d at 31. We further noted that "[t]he policy behind finality, *i.e.*, of eliminating piecemeal litigation and the delays caused by interlocutory appeals applies with particular force in the criminal justice system." 428 A.2d at 34 (citation omitted). If such is the case with respect to appeals by nonparties, *a fortiori* the doctrine applies to parties, where sanctions in addition to contempt are available and where effective relief may usually be granted following final disposition of the entire proceeding. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981).

We construe the order on appeal here as the functional equivalent of a discovery order and on that basis deem it nonappealable at this point. It is true that in format, it contains language of command: "this Court this 12th day of April 1990 [sic] orders Mr. Horton committed to St. Elizabeths Hospital.... We order that the commitment shall be for as long as the doctors determine it necessary...." However, language of command is not unusual in discovery situations; in *Harrod*, the appellant was subject to an "order requiring [her] to undergo a psychiatric exam." *Harrod, supra*, 428 A.2d at 30.

More importantly, it appears from the proceedings leading to the issuance of the order that the trial court itself viewed the order as an aid to discovery. The underlying rationale for the order was that "[t]he government is not bound by the evaluation of Defense doctors. They have the right to have their own evaluations to meet their obligations or to meet such evidence." Furthermore, this significant interchange took place with respect to the consequences of noncompliance with the order:

> [Defense counsel]: [O]ur position is that the Court has no authority to order a commitment of Mr. Horton for these pur-

---

3. The court made it clear, however, that it had no expectation that the commitment would last anywhere near that length of time. "Well, all I'm saying is that St. Elizabeths Hospital in my discussions with them have said they will expedite. They will do what is necessary and get

him out of the hospital. We're not talking about a 60–day stay, we're talking about an expeditious evaluation."

4. Horton also filed an appeal from the new order, which was designated No. 91–397.

poses, and the case law in support of that is set forth in our motion to stay.

THE COURT: Before you run with that, what does the case law say happens if I order it, you say no, what does the Court then do? The Court does not find you in contempt. What does it do? What is the alternative that you have?

[Defense counsel]: I'm sorry, Your Honor, I didn't hear the first part?

THE COURT: What is the alternative that you have if I order it and you say no, we will not submit?

[Defense counsel]: Oh, you're saying in that—at that point we would be waiving the ability to put on the insanity defense? Is that what you're talking about?

THE COURT: Isn't that what the case law says?

[Defense counsel]: Your Honor, I don't think that our objection and our position that the Court does not have authority to commit him for a 60–day in-patient—

THE COURT: I know that. In fact, the case law says specifically the Court cannot require him to go to St. Elizabeths for this evaluation, but if you will not what does it say you do?

Thus, we cannot agree with appellant's argument that the order now before us differs from that in *Harrod* on the basis that it is an order of immediate commitment. If the order should subsequently be so treated, it can be appropriately dealt with at that point.

■ We also decline to review the order under the petition for a writ of mandamus. It is familiar and long-established doctrine that "it is only in very exceptional circumstances that there will be justification for the invocation of the extraordinary remedy of mandamus against a trial court. In order for such a writ to issue, the party seeking it must show that its right to the issuance of the writ is 'clear and indisputable.'" *United States v. Braman,* 327 A.2d 530 (D.C.1974), *cert. denied,* 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975), citing *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). The writ of mandamus "is not to be used as a substitute for appeal." *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964). While appellant poses facially significant issues with respect both to the authority of the trial court to order a commitment on the facts here and to the adequacy of the hearing leading to the order,[5] they are not such as to warrant invocation of the extraordinary remedy of mandamus under the established strictures on that writ.[6]

### III

■ We also must deal with a question of procedure. On April 10, an appeal was filed from the trial court order of that date ordering Horton to present himself at St. Elizabeths Hospital. It is familiar doctrine that once an appeal has been filed, control over the order or judgment appealed vests in the appellate court. "While the line that marks the division between what the trial court may and may not do is usually cast in terms of 'lack of jurisdiction,' the doctrine is judge-made, designed to avoid the confusion and waste of time that might flow from having two courts deal with a single case at the same time." *Carter v. Cathedral Avenue Cooperative, Inc.,* 532 A.2d 681, 684 n. 7 (D.C.1987).[7]

---

5. The appellee has so far confined itself essentially to the issue of jurisdiction that we requested be briefed.

6. Thus, by denying the petition, we in no way preclude subsequent challenges to the contested actions on precisely the same grounds raised in the writ.

7. Thus, the doctrine is subject to a common-sense flexibility in application. *See, e.g., Padgett v. Padgett,* 478 A.2d 1098 (D.C.1984); 9 J. MOORE, FEDERAL PRACTICE ¶ 203.11 at 3–45 n. 1 (2d ed. 1987). For instance, a trial court may proceed with other aspects of the litigation unconnected with the order or judgment on appeal. Indeed, "where it is *plain* that the notice of appeal is a premature act or otherwise untimely (as from a nonappealable order), the trial court may proceed with pending matters in the case." *Carter, supra,* 532 A.2d at 684 (emphasis added). However, this qualification should be considered inapplicable where, as here, there is significant doubt about the question of appealability, and the matter is under active consideration by the appellate court. The appellate court of course has jurisdiction to consider jurisdiction and may issue temporary stays on that basis.

That is not to say that the trial court is precluded from reconsidering a judgment or order on appeal or holding a hearing for that purpose. Such a situation may arise, for example, in the context of a new trial motion made to the trial court after an appeal from the judgment has been filed with this court. In *Smith v. Pollin*, 90 U.S.App.D.C. 178, 180, 194 F.2d 349, 350 (1952), the court laid down the procedure to be followed: "[T]he proper procedure is for [the appellant] to file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in this court for a remand of the case in order that the District Court may grant the motion for new trial."

Hence, unless we had in some manner transmitted control back to the trial court, the trial court's unilateral action of vacating its order of April 10 was improper. However, the trial court understandably may have so interpreted our order the afternoon of April 12, in which we extended the temporary stay "to allow the trial court to complete its consideration of this matter." Whether we meant by "this matter" the issue of the stay itself or of the underlying order was indeed not entirely clear.

In any event, to remove any doubt as to the precise technical status of the April 10 order, we are remanding the case in appeal No. 91–388 *nunc pro tunc* to April 12, 1991. In so doing, we are effectuating the order of vacation entered by the trial court on that date. Accordingly, that appeal may now formally be dismissed as moot.

## IV

Finally, we address the issue of stays pending appeal, which became convoluted here. Both trial and appellate courts are authorized to issue stays of orders and judgments. D.C.App.R. 8; Super.Ct. Crim.R. 38; Super Ct.Civ.R. 62. In determining whether to grant stays pending appeal—that is, stays which are to continue until final disposition by the appellate court—the same criteria apply in both courts; namely, the familiar four-factor

test set forth in, *e.g.*, *Barry v. Washington Post Co.*, 529 A.2d 319, 320–21 (D.C.1987).

It is a basic principle of our appellate jurisprudence that this court will not ordinarily entertain such a motion until and unless resort has been had to the trial court. Specifically, our Rule 8(a) states in part:

> (a) *Stay must ordinarily be sought in the first instance in the Superior Court; motion for stay in this court.* Application for a stay of the judgment, decision, or order pending appeal ... shall ordinarily be made in the first instance in the Superior Court. A motion for such relief may be filed with the clerk, but it shall state that application to the Superior Court for the relief sought is not practicable, or that the Superior Court has denied such an application or the relief which the applicant requested. (Emphasis in original.)

We construe this rule strictly. Here, as in other matters, we are acutely cognizant of the fact that "[i]t is always difficult to review a cold appellate record and acquire a full understanding of all the facts, nuances, and attitudes that influence a trial judge's decisionmaking," and that "the trial judge is privy to certain information not always reflected in the appellate record, such as her impression of the demeanor and attitude of the parties, her intentions in handling the future course of the proceedings, and her understanding of how the limited issue faced on appeal fits within the larger factual and procedural context." *United States v. Taylor*, 487 U.S. 326, 342–43, 346–47, 108 S.Ct. 2413, 2424–25, 101 L.Ed.2d 297 (1988) (majority and dissenting opinions). Therefore, we are loath to proceed with a stay pending the outcome of the appeal without the input of the trial court to this decision, recognizing, however, as we must, that if called upon to make the decision following the denial of a trial court stay, we like the trial court must apply the law governing stays as best we can discern it in its application to the particular appeal.

So far, this is straightforward enough. However, a recurring situation where prob-

lems may arise, as we think may have happened in this particular case, is where the trial court has issued an order and, before the trial court has acted on the motion for stay, an appeal is immediately taken to this court, together with a request for a stay. Our rule speaks only of a stay "pending appeal." However, more precisely, it should be realized that a stay can have two purposes: one is the classic stay pending the final disposition of the appeal by the appellate court; the other is a temporary stay entered for a limited duration, usually to maintain the status quo until some further step can be taken.

When Horton filed his appeal on April 10 and requested that we grant a stay, it was our understanding that the trial court had not considered the motion for stay. Furthermore, it was represented to us that the trial court had not scheduled a hearing on the stay until the morning of April 12, although the order on appeal required Horton to report to St. Elizabeths by the close of business on April 11. Accordingly, citing our Rule 8, we stayed the order until 2 p.m. on April 12. This stay was thus simply a stay to allow the trial court itself, with its superior position of familiarity with the facts and circumstances, to make a determination whether a permanent stay pending disposition of the appeal should be entered.

When we were informed that the trial court had ordered a stay only until 4:30 p.m., at which time an evidentiary hearing was scheduled, we thought that the orderly course to ensure sufficient time both for the trial court to complete its consideration and for our appellate consideration was to grant a stay until the following Tuesday. Hence we entered such an order.

■ Except in unusual circumstances, an appellate court should not be called upon to grant stays other than permanent stays pending the final outcome of the appeal. First, an appellant before seeking a stay from this court should follow Rule 8 and make application for such a stay in the first instance to the trial court. Equally important, if a trial court determines it will deny a permanent stay pending the outcome of the appeal, orderly appellate consideration of such a stay will be greatly enhanced if either by grant of a temporary stay or, which is the same thing, by postponement of the effective date of the relevant order, the trial court will allow sufficient time for the appellant to seek a permanent stay in this court and for this court to give proper consideration to that request.

In this regard, it should be kept in mind that our court by statute acts in divisions of three judges. D.C.Code § 11–705 (1989). It is only in "exceptional circumstances" that a single judge of this court may make even an interim ruling. D.C.App.R. 8(a). Furthermore, the appellee has the right to file an opposition to a motion for a stay, normally seven days. D.C.App.R. 27(a).

Obviously there will be circumstances which will not permit such a measured pace of events. But those should be rare.[8] Due consideration and understanding by both trial and appellate courts of the obligations and responsibilities of the other tribunal with respect to matters entering the appellate process should minimize the sense of confusion and uncertainty that perhaps was at times existent here.

Appeal No. 91–397 is dismissed for want of jurisdiction. Appeal No. 91–388 is dismissed as moot. The petition for a writ of mandamus in No. 91–434 is denied.

*So ordered.*

---

**8.** For instance, we cannot readily ascertain from the record why commitment of Horton to St. Elizabeths was deemed necessary by midnight of the day of the hearing. He had been released on personal recognizance for over a year and any present danger that he might pose could be dealt with through other mechanisms. *See* note 1 *supra.*